# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JHON ALCIDE, RICHARD ALLEN-EASMON, | ) | |
| DUSTIN ANGLE, JESUS ARGUELLO, | ) | |
| VALERIE ARGUELLO, FRANCIS ASUNCION, | ) | |
| MARISSA ASUNCION, SASCHA BELIN, | ) | |
| LEEANN BIENAIME, LEHONARD BIENAIME, | ) | |
| LAKITRA BURNS-JONES, DEONTE CARTER, | ) | CIVIL ACTION NO.: 19-cv-13691- |
| CARLOS CLARK, CIERA CLARK, | ) | LMA-DMD |
| ELIZABETH FELDERMAN, ROD FELDERMAN | ) | |
| MEGAN FITZPATRICK, CASEY FRENZEL, | ) | |
| RICHARD GANT, SAMANTHA GANT, | ) | SECTION "I" (3) |
| MARNITTA GEORGE, ROLLIN GEORGE, | ) | |
| LINDSAY GONZALEZ RAUL GONZALEZ, | ) | |
| RAINFORD GRAHAM, TERRY GUIDRY, | ) | |
| MEGHAN HRNCIR, SHERRIA HUGHLEY, | ) | JUDGE:  LANCE M. AFRICK |
| JERMAINE JONES, ANA KENEBREW , | ) | |
| FREDDIE KENEBREW, DERRICK KENNERLY, | ) | |
| OBRA KING, ANTHONIE LAMAY, ERIN LAMAY, | ) | |
| GAYLORD LAWRENCE, SYDNEE LEGRANDE, | ) | MAGISTRATE:  DANA DOUGLAS |
| TYLOR LOCKLEAR, WILFRED MARQUIS, | ) | |
| MATTHEW MATCZAK, JOHN MEAD, | ) | |
| ANTOINETTE MORTON, ANTONIO MORTON, | ) | |
| CHRISTIAN NASH, VALERIA REINOSO, | ) | |
| CHRISTOPHER RIVERA, TUYUAN RIVERA, | ) | |
| JACKSON SCHRIMSHER, MICHAEL SHEPPARD, | ) | |
| JOSHUA TAPIA, DANIEL TAYLOR, | ) | |
| MICHAEL WATSON, SAMUEL WILLIAMS, | ) | |
| TYQUAIL WILLIAMS, TIMOTHY WINTERS, | ) | |
| RASHAD WOODS,  JACQUELINE WRAGE, | ) | |
| DANIEL LEE, JOSHUA MASON, | ) | |
| REL MASON AND JARED OGILVIE | ) | |
|     *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NIPPON YUSEN KABUSHIKI KAISHA | ) | |
|     *Defendant*. | ) | |
| | ) | |

# FIRST AMENDED COMPLAINT

Plaintiffs, by and through the undersigned counsel, bring this action in admiralty and general maritime law against Defendant Nippon Yusen Kabushiki Kaisha (hereinafter "NYK Line"). Based upon knowledge, information, and belief, these Plaintiffs allege the following:

## BACKGROUND

1.     These claims arise out of the collision between the *USS Fitzgerald* and the *ACX Crystal* off the coast of Japan on June 17, 2017. The collision flooded the *USS Fitzgerald*, killing seven (7) young Sailors[1] and injuring scores of others. The Plaintiffs in this action were all Sailors aboard the *USS Fitzgerald* at the time of the collision. All sustained significant physical and/or emotional injuries as a direct result of the collision and its aftermath.

## PARTIES

**The Plaintiffs**

2.     Plaintiff Jhon Alcide is an adult citizen of New York. Plaintiff Alcide is currently a Lieutenant (O-3) in the United States Navy.

3.     Plaintiff Richard Allen-Easmon is an adult citizen of Florida. Plaintiff Allen-Easmon is currently a Petty Officer 2nd Class (E-5) in the United States Navy.

4.     Plaintiff Dustin Angle is an adult citizen of California. Plaintiff Angle is currently a Petty Officer 1st Class (E-6) in the United States Navy.

5.     Plaintiff Jesus Arguello is an adult citizen of Arizona. Plaintiff Arguello was a Petty Officer 2nd Class (E-5) in the United States Navy at all relevant times herein mentioned. Plaintiff Arguello was Honorably Discharged from the Navy on October 23, 2017.

---

[1] *See* Douglass et al. v. Nippon Yusen Kabushiki Kaisha, which is the companion case for Sailors who died in this collision.

2

6.      Plaintiff Francis Asuncion is an adult citizen of California. He is currently a Senior Chief Petty Officer (E-8) in the United States Navy.

7.      Plaintiff Sascha Belin is an adult citizen of South Carolina. Plaintiff Belin is currently a Seaman (E-3) in the United States Navy.

8.      Plaintiff Lehonard Bienaime is an adult citizen of Virginia. Plaintiff Bienaime is currently a Seaman (E-3) in the United States Navy.

9.      Plaintiff Deonte Carter is an adult citizen of Georgia. Plaintiff Carter is currently a Petty Officer 2nd Class (E-5) in the United States Navy. Plaintiff Carter was Medically Discharged from the Navy on January 29, 2020 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

10.     Plaintiff Carlos Clark is an adult citizen of California. Plaintiff Clark is currently a Chief Petty Officer (E-7) in the United States Navy.

11.     Plaintiff Rod Felderman is an adult citizen of North Carolina. Plaintiff Felderman was a Petty Officer 2nd Class (E-5) in the United States Navy at all relevant times herein mentioned. Plaintiff Felderman was Medically Discharged from the Navy on January 29, 2019 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

12.     Plaintiff Casey Frenzel is an adult citizen of Virginia. Plaintiff Frenzel is currently a Petty Officer 1st Class (E-6) in the United States Navy.

13.     Plaintiff Richard Gant is an adult citizen of Florida. Plaintiff Gant was a Petty Officer 2nd Class (E-5) in the United States Navy at all relevant times herein mentioned. Plaintiff Gant was Medically Discharged from the Navy on October 28, 2019 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

14.     Plaintiff Rollin George is an adult citizen of California. Plaintiff George is currently a Lieutenant Junior Grade (O-2) in the United States Navy.

15.     Plaintiff Raul Gonzalez is an adult citizen of California. Plaintiff Gonzalez is currently a Petty Officer 3rd Class (E-4) in the United States Navy.

16.     Plaintiff Rainford Graham is an adult citizen of Virginia. Plaintiff Graham is currently a Petty Officer 1st Class (E-6) in the United States Navy.

17.     Plaintiff Terry Guidry is an adult citizen of Florida. Plaintiff Guidry is currently a Petty Officer 1st Class (E-6) in the United States Navy.

18.     Plaintiff Sherria Hughley is an adult citizen of Virginia. Plaintiff Hughley is currently a Petty Officer 2nd Class (E-5) in the United States Navy. Plaintiff Hughley was Medically Discharged from the Navy on November 28, 2019 due to the injuries she sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

19.     Plaintiff Jermaine Jones is an adult citizen of Florida. Plaintiff Jones is currently a Petty Officer 1st Class (E-6) in the United States Navy.

20.     Plaintiff Freddie Kenebrew is an adult citizen of California. Plaintiff Kenebrew is currently a Petty Officer 1st Class (E-6) in the United States Navy.

21.     Plaintiff Derrick Kennerly is an adult citizen of California. Plaintiff Kennerly is currently a Seaman (E-3) in the United States Navy.

22.     Plaintiff Obra King is an adult citizen of Florida. Plaintiff King is currently a Petty Officer 1st Class (E-6) in the United States Navy.

23.     Plaintiff Anthonie LaMay is an adult citizen of Virginia. Plaintiff LaMay is currently a Chief Petty Officer (E-7) in the United States Navy.

24.     Plaintiff Gaylord Lawrence is an adult citizen of Virginia. Plaintiff Lawrence is currently a Seaman (E-3) in the United States Navy.

25.     Plaintiff Tylor Locklear is an adult citizen of North Carolina. Plaintiff Locklear was a Petty Officer 3rd Class (E-4) at all relevant times herein mentioned. Plaintiff Locklear was Medically Discharged from the Navy on May 29, 2019 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

26.     Plaintiff Wilfred Marquis is an adult citizen of Maryland. Plaintiff Marquis was a Petty Officer 1st Class (E-6) in the United States Navy at all relevant times herein mentioned. Plaintiff Marquis was Medically Discharged from the Navy on October 28, 2019 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

27.      Plaintiff Matthew Matczak is an adult citizen of Florida. Plaintiff Matczak is currently a Petty Officer 1st Class (E-6) in the United States Navy.

28.     Plaintiff John Mead is an adult citizen of California. Plaintiff Mead was a Petty Officer 3rd Class (E-4) in the United States Navy at all relevant times herein mentioned. Plaintiff Mead was Medically Discharged from the Navy on April 29, 2019 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

29.     Plaintiff Antonio Morton is an adult citizen of Washington. Plaintiff Morton is currently a Chief Petty Officer (E-7) in the United States Navy.

30.      Plaintiff Christian Nash is an adult citizen of California. Plaintiff Nash is currently a Petty Officer 2nd Class (E-5) in the United States Navy.

31.     Plaintiff Christopher Rivera is an adult citizen of Florida. Plaintiff Rivera is currently a Petty Officer 2nd Class (E-5) in the United States Navy. Plaintiff Rivera was

Medically Discharged from the Navy on January 28, 2020 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

32.     Plaintiff Jackson Schrimsher is an adult citizen of Virginia. Plaintiff Schrimsher is currently a Petty Officer 2nd Class (E-5) in the United States Navy.

33.     Plaintiff Michael Sheppard is an adult citizen of California. Plaintiff Sheppard is currently a Petty Officer 3rd Class (E-4) in the United States Navy. Plaintiff Sheppard was Medically Discharged from the Navy on January 28, 2020 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

34.     Plaintiff Joshua Tapia is an adult citizen of Texas. Plaintiff Tapia is currently a Petty Officer 2nd Class (E-5) in the United States Navy. Plaintiff Tapia was Medically Discharged from the Navy on November 27, 2019 due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

35.      Plaintiff Daniel Taylor is an adult citizen of California. Plaintiff Taylor is currently a Petty Officer 2nd Class (E-5) in the United States Navy.

36.     Plaintiff Michael Watson is an adult citizen of Illinois. Plaintiff Watson was a Petty Officer 3rd Class (E-4) in the United States Navy at all relevant times herein mentioned. Plaintiff Watson was Honorably Discharged from the Navy on February 2, 2018.

37.     Plaintiff Samuel Williams is an adult citizen of Virginia. Plaintiff Samuel Williams is currently a Petty Officer 1st Class (E-6) in the United States Navy.

38.     Plaintiff TyQuail Williams is an adult citizen of California. Plaintiff TyQuail Williams is currently a Petty Officer 2nd Class (E-5) in the United States Navy. Plaintiff TyQuail Williams has been found medically unfit to continue serving in the Navy due to the injuries he sustained in the collision between the *USS Fitzgerald* and the *ACX Crystal* on June 17, 2017.

39.     Plaintiff Timothy Winters is an adult citizen of Virginia. Plaintiff Winters is currently a Lieutenant (O-3) in the United States Navy.

40.     Plaintiff Rashad Woods is an adult citizen of California. Plaintiff Woods is currently a Seaman (E-3) in the United States Navy.

41.     Plaintiff Jacqueline Langlais Wrage is an adult citizen of Florida. Plaintiff Wrage is currently a Petty Officer 2nd Class (E-5) in the United States Navy.

42.     Plaintiff Daniel Lee is an adult citizen of Mississippi. Plaintiff Lee was a Chief Petty Officer (E-7) in the United States Navy at all relevant times herein mentioned. Plaintiff Lee was Honorably Discharged from the Navy on September 30, 2019.

43.     Plaintiff Joshua Mason is an adult citizen of Texas. Plaintiff Mason was a Petty Officer 2nd Class (E-5) in the United States Navy at all relevant times herein mentioned. Plaintiff Mason was Honorably Discharged from the Navy on September 30, 2019.

44.     Plaintiff Jared Ogilvie is an adult citizen of Washington. Plaintiff Ogilvie is currently a Senior Petty Officer (E-8) in the United States Navy.

**The Defendant**

45.     The defendant in this case is Nippon Yusen Kabushiki Kaisha, a Japanese corporation, doing business as "NYK Line," and is hereinafter referred to as **NYK Line**. NYK Line's corporate headquarters is located at 3-2 Marunouchi, 2-Chome, Chiyoda-Ku, Tokyo 100-0005.

46.     Upon information and belief, NYK Line is one of the largest shipping and logistics conglomerates  in the world, doing business globally in Japan and the United States, as well as North and South America, Australia, Africa, East and South Asia, and Europe.

47. On its website,[2] NYK Line holds out to the public that its business operates as a corporate "Group" through several hundred wholly-owned subsidiary companies. NYK Line has accordingly adopted a "Group Mission Statement," a "Code of Conduct," a "Business Credo," and a "Corporate Profile." The NYK Line "Group" operates a fleet of 710 vessels (as of March 19, 2019). NYK Line has formally adopted "Corporate Governance Guidelines," effective November 26, 2015, that emphasize the integrated operation of the NYK Group. Article 2 of these Guidelines refers to operating a "set of systems, organizations or frameworks" for making business decisions. Article 3 of these Guidelines formally adopts the Group Mission Statement and integrated management of all NYK companies.

48. On June 17, 2017, the date of the collision between the *ACX Crystal* and the *USS Fitzgerald,* the registered owner of the *ACX Crystal* was Olympic Steamship Co. S.A., a Panamanian corporation. Upon information and belief, Olympic Steamship Co. S.A. is a special purpose entity acting on behalf of Dainichi-Invest Co. Ltd., a Japanese company with its sole office in Kobe, Japan. Upon information and belief, Dainichi-Invest Co. Ltd. is an investment entity that was acting on behalf of the real owner of the *ACX Crystal*, NYK Line.

49. As NYK Line itself stated in multiple press releases published on its website in the immediate aftermath of the collision, NYK Line was the sole charterer of the *ACX Crystal* on June 17, 2017.[3] Upon information and belief, on the date of the collision, NYK Line was acting as the demise (bareboat) charterer of the *ACX Crystal*, with principal responsibility for the navigation and/or operation of the *ACX Crystal.* Alternatively, upon information and belief, NYK Line was acting as the time charterer of the *ACX Crystal* and participated in the navigation

---

[2] NYK Line, https://nyk.com/english/ (last visited February 7, 2020).
[3] *See* Exhibits 1-4.

of the *ACX Crystal* on June 17, 2017. Thus, upon information and belief, NYK Line engaged in and/or participated in the negligent conduct that caused the death of the Plaintiff-decedents in this action. In fact, NYK Line has publicly apologized for the collision,[4] an acknowledgement of responsibility.

50.     Upon information and belief, as stated in the English translation of the *Marine Accident Investigation Report* released by the Japan Transport Safety Board (JTSB) (hereinafter JTSB Report), at the time of the collision an officer of the *ACX Crystal* was "a navigator of NYK Containr [sic] Line Co., Ltd." Further, according to the JTSB Report, NYK Container Line Co. Ltd. was the "operator" of the *ACX Crystal* at the time of the collision.

51.     Upon information and belief, on June 17, 2017, Asia Container Express, known as ACX, employed the *ACX Crystal* for the purpose of shipping containers. Asia Container Express is the intra-Asia container shipping arm of NYK Line. Thus, on the date of the collision, NYK Line was involved in multiple ways in the operation and navigation of the *ACX Crystal.*

52.     Upon information and belief, NYK Container Line Co. Ltd., Asia Container Express, and other NYK affiliated companies or business entities participating in the management and/or navigation of the *ACX Crystal* on June 17, 2017, were acting as agents and/or instrumentalities of NYK Line.

## JURISDICTION, CHOICE OF LAW, VENUE, AND THE DEFENDANT'S PERVASIVE CONTACTS WITH THE UNITED STATES

53.     This Court has jurisdiction of these causes of action pursuant to 28 U.S.C. § 1333 (admiralty and maritime cases), and the Plaintiffs in this case choose to proceed under the saving to suitors clause of 28 U.S.C. § 1333, which authorizes Plaintiffs to invoke the jurisdiction of this Court and to proceed under 28 U.S.C. § 1332 (diversity of citizenship), all claims being in excess

---

[4] *See* Exhibit 1.

of $75,000 excluding costs and interest. In addition, the court has jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

54.     Although the collision that is the subject of this cause occurred approximately 80 nautical miles southwest of the US Naval base at the port of Yokosuka, Japan, and within the territorial waters of Japan, maritime choice of law principles announced by the Supreme Court of the United States[5] point unequivocally to the application of United States law in this cause of action.

55.     The claims in the case at bar arise under the United States general maritime law.

56.     Personal jurisdiction over NYK Line is proper in the case at bar pursuant to Rule 4(k)(2) of the Federal Rules of Civil Procedure in that the claims involved arise under federal law, NYK Line is a foreign corporation that is not subject to jurisdiction in any state's court of general jurisdiction, and NYK Line has substantial, systematic and continuous contacts with the United States as a whole. Thus, this Court has personal jurisdiction over NYK Line in the case at bar, consistent with the Fifth Amendment's Due Process Clause.

57.     NYK Line's presence in the United States is long-standing: It first opened its offices in New York in 1920.[6]

58.     Upon information and belief, NYK Line operates at least thirteen wholly-owned subsidiary companies in the United States. Upon further information and belief, NYK Line conducts numerous business activities in the United States, including operating twenty-seven shipping terminals in United States' ports, more than it operates in Japan.

---

[5] *See e.g. Lauritzen v. Larson,* 345 U.S. 571 (1953); *Romero v. International Terminal Operating Co*., 358 U.S. 354 (1959); and *Hellenic Lines v. Rhoditis*, 398 U.S. 306 (1970).

[6] *See* Exhibit 5.

59.     Part of NYK Line's corporate "Group" includes a Regional Management Office in Secaucus, New Jersey, as well as subsidiaries across the United States that collectively serve each of NYK Line's business industries, including Liner Trade, Logistics, Bulk Shipping, and other business services.

60.     NYK Line represents that its corporate Group employs approximately 2,100 people in North America as of 2019, the vast majority of whom, upon information and belief, are employed in the United States. NYK Line further represents that its corporate Group employees in North America numbered about 2,800 in 2016, at or around the time of the collision between the *USS Fitzgerald* and the *ACX Crystal*. Upon information and belief, the vast majority of the 2,800 were employed in the United States.[7]

61.     Upon information and belief, NYK Line vessels regularly call on at least thirty United States' ports, located both on the east and west coasts and the Gulf of Mexico, including the port of New Orleans.

62.     Upon information and belief, NYK Line, through its corporate Group, has offices throughout the United States, including in Secaucus, New Jersey and Los Angeles and Oakland, California.

63.     NYK Line's business activities in the United States are under the control of NYK Line as to sales, finance, and corporate policies. For example, NYK Line represents the following, evidencing its control over and management of the corporate Group:[8]

---

[7] *See* NYK Group, NYK Report at 86 (2019), https://www.nyk.com/english/ir/pdf/2019_nykreport_all.pdf.

[8] *See* NYK Group, NYK Report at 64-70 (2019), https://www.nyk.com/english/ir/pdf/2019_nykreport_all.pdf.

a. "NYK has a number of group companies, including subsidiaries and affiliated companies, and the management situation of these companies has a major impact on NYK's own management. If a governance deficiency occurs at a group company, this means there is a problem with NYK's governance."

b. "If NYK has too many group companies, it will be difficult to closely monitor all aspects of these companies."

c. "The Company . . . maintains a Committee of Corporate Officers comprising 28 members from domestic and overseas companies, including individuals also serving on the Board of Directors."

d. "The NYK Group is structured with a Group governance framework to promote asset efficiency with the overarching objective of enhancing the corporate value of the Group. The Group is revising the management appointment and remuneration decision processes of group companies to improve transparency and unify operating procedures. In addition, the Company has a system of dispatching one auditor from a dedicated department to each group company to oversee director business execution and to ensure consistency in the judgment criteria during audits."

64. Upon information and belief, NYK Line operates its wholly-owned subsidiaries in the United States and its United States offices as a corporate group and an integrated whole. Upon information and belief, NYK Line shares high-level corporate personnel with its wholly-owned United States subsidiaries. For example, the Chief Executive Officer of NYK Line North America, Mr. Hiroshi Kubota, is also a corporate officer of NYK Line, Tokyo, and a member of NYK Line's Corporate Planning Group and Group Management Promotion Group in Tokyo.

Upon information and belief, Mr. Kubota had and continues to have corporate responsibilities as it relates to NYK Line in Japan and in the United States. Mr. Kubota has lived and worked for NYK Line in both the United States and Japan. Upon further information and belief, he currently acts as the Chief Executive Officer of NYK North America while living in Japan and working for NYK Line.[9]

65.     NYK Line's Group Americas is one of NYK Line's primary subsidiaries and NYK Line maintains 100 percent of its voting rights. Upon information and belief, NYK Line's wholly-owned subsidiaries operating in the United States act as agents and/or instrumentalities of NYK Line. Under these circumstances, it would be grossly unfair to allow NYK Line to evade this Court's jurisdiction by relying on its many wholly-owned subsidiaries to disguise its own pervasive contacts with the United States.

66.     NYK Line's acquisitions in the United States also demonstrate the extent of its contacts here. For example, upon information and belief, in 2002, NYK Line acquired and now owns Ceres Terminals, which operates ports and terminals throughout the United States.[10] Ceres Terminals operates New Orleans Terminal LLC at the Napoleon Avenue Terminal. This terminal handles 165,000 containers per year.[11] Ceres Terminals has an active filing with the Louisiana Secretary of State.

67.     Also in Louisiana, NYK Line is actively promoting its new ventures in Liquefied Natural Gas. Upon information and belief, NYK Line is an equity partner in a natural gas facility

---

[9] *See* Exhibits 6-8.

[10] *See* NYK Line, NYK Line Fact Book 2017 at 28 (Apr. 28, 2017) https://www.nyk.com/english/ir/library/fact/first/2017/__icsFiles/afieldfile/2019/10/17/2017_factbook01_all.pdf/

[11] Ceres, "New Orleans, Louisiana," https://www.ceresglobal.com/locations/new-orleans.html/.

that recently opened in Hackberry, Louisiana. The project plans to produce 12 million tons of liquefied natural gas per year.[12] Additionally, upon information and belief, NYK Line signed a deal to manage the shipment of liquefied natural gas from Louisiana.[13] Importantly, NYK Line has the world's largest share of total liquefied natural gas capacity (6.3 percent).

68.     Additionally, in November 2016, NYK Line, by and through NYK Ports, acquired a 20 percent stake in Maher Terminals, which operates a terminal in the United States Port of New York and New Jersey. The Maher terminal is the largest in the port.[14]

69.     NYK Line devotes a substantial amount of resources to do business with the United States. In 2012, NYK Line dedicated seven of its vessels exclusively for Toyota's North American service for the delivery of automobiles to the United States.[15]

70.     NYK Line's consolidated revenue from North America for the fiscal year ending March 31, 2017 was $1.36 billion. For the fiscal year ending March 31, 2019, NYK Line's consolidated revenue from North America was $1.47 billion.[16] Upon information and belief, the vast majority of this revenue came from business activity in and with the United States.

---

[12] NYK Line, "LNG Production Gets Underway in U.S.'s Cameron LNG Project," (May 14, 2019), https://www.nyk.com/english/news/2019/20190514_01.html/.

[13] MarineLink, "NYK in Charter Agreement with Mitsubishi," (December 12, 2018) https://www.marinelink.com/news/nyk-charter-agreement-mitsubishi-460665/ (accessed Nov. 1, 2019).

[14] NYK Line, "NYK Ports Acquires Share of New York/New Jersey's Largest Terminal," (Nov. 17, 2016),  https://www.nyk.com/english/release/4208/004529.html/

[15] Ken Belson, "Around the World with 5,500 Cars," N.Y. Times (July 13, 2012). https://www.nytimes.com/2012/07/15/automobiles/around-the-world-with-5500-cars.html/ (accessed Nov. 1, 2019).

[16] NYK Group, "NYK Financial Results: Year Ended March 31, 2019, at 36, available at https://www.nyk.com/english/ir/pdf/2019_financial_result.pdf/

71.     In 2017, NYK Line reportedly stood as the 8th ranked container carrier in the containerized import trade for the United States. NYK Line's market share is increasing rapidly year-over-year.[17]

72.     In 2017, NYK Line was ranked 7th in the United States containerized export trade. NYK Line's market share is increasing rapidly year-to-year.[18]

73.     As even further evidence of their significant business activities in the United States, NYK Line previously engaged in a criminal scheme in furtherance of its business interests. According to the United States Department of Justice, between 1997 to at least 2012, NYK Line was involved in a "conspiracy to fix prices, allocate customers, and rig bids of international ocean shipping services for roll-on, roll-off cargo, such as cars and trucks, to and from the United States and elsewhere."[19] NYK Line pleaded guilty to felony charges associated with this criminal price fixing conspiracy for shipments to and from the United States.[20] For its extensive felonious activities with the United States for more than a decade, NYK Line paid about $60 million in criminal fines.[21]

---

[17] JOC Maritime News, "Top 5 Ocean Carriers Serving US Trades See Export Share Slips," (Apr. 9, 2018), https://www.joc.com/maritime-news/container-lines/top-5-ocean-carriers-serving-us-trades-see-export-share-slips_20180409.html/

[18] *Id.*

[19] Department of Justice Press Release, "Third Company Agrees to Plead Guilty to Price Fixing on Ocean Shipping Services for Cars and Trucks," (December 29, 2014), https://www.justice.gov/opa/pr/third-company-agrees-plead-guilty-price-fixing-ocean-shipping-services-cars-and-trucks/ (accessed Nov. 1, 2019).

[20] *Id.*

[21] *Id.*

74.     NYK Line has purposefully and profitably availed itself of the benefits and protections afforded by the United States' Constitution and laws. Accordingly, NYK Line's contacts with the United States as a whole are so significant, extensive, systematic, and continuous as to render it  essentially "at home" in the United States.

75.     Venue in the case at bar is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3), as this is a judicial district in which NYK Line is subject to this Court's service of process and personal jurisdiction with respect to this action, and there being no other judicial district in which NYK Line resides, or in which a substantial part of the events or omissions relating to the case at bar occurred

## FACTS APPLICABLE TO ALL COUNTS

### Introduction and Background of the *USS Fitzgerald*



*Figure 1: The USS Fitzgerald in September 2014*

16

76.     The *USS Fitzgerald* is a 505-foot long, 8,300-deadweight ton Arleigh Burke-class destroyer that is owned and operated by the United States Navy. The *USS Fitzgerald* was launched in January 1994 and commissioned in October 1995.

77.     On the morning of June 16, 2017, the *USS Fitzgerald* left its home port of Yokosuka, Japan, to conduct military operations. It had onboard one Commanding Officer, three Watch Officers, one Able Seaman, and 288 Crewmembers.

78.     On June 17, 2017, at approximately 1:30 AM, the *ACX Crystal*, a container ship, struck the *USS Fitzgerald*. The collision happened in the vicinity of the Mikomoto Shima Voluntary Traffic Separation Scheme (VTSS), approximately nine (9) nautical miles off the coast of Japan.

79.     The *ACX Crystal*'s bow collided with the *USS Fitzgerald* on its starboard side, tearing a 13' x 17' hole in its hull, just aft of Berthing Unit 2. It also breached the Auxiliary Machine Room of the *USS Fitzgerald,* causing flooding.



*Figure 2: Diagram of approximate point of impact between the USS Fitzgerald (left) and the ACX Crystal (right)*

80.     The striking of the *USS Fitzgerald* by the *ACX Crystal* caused the drowning deaths of seven (7) Sailors, all of whom resided in Berthing Unit 2 and were located on its

17

starboard side. Additionally, the collision caused physical and/or psychological injuries to many

Sailors aboard the vessel who survived the collision, including all Plaintiffs in this Complaint.

**Configuration of the *USS Fitzgerald***



*Figure 3: Diagram of Berthing Unit 2 layout indicating location of egress points and rack rows*

81.    Berthing Unit 2 has three egress points: a water-tight hatch and an emergency

escape scuttle on the port-side, and a non-tight door set in a non-structural bulkhead on the

starboard side.

82.    On the port-side, a ladder leads from Berthing 2 through a hatch with a water-

tight scuttle to the Berthing 1 port vestibule.

83.    On the starboard side, the non-tight door leads aft into the Berthing 2 starboard

vestibule, which has a ladder up through a hatchway to the Berthing 1 starboard vestibule.

84.    The non-tight door leads forward into a lounge on the starboard side.

85.    There is no water tight hatch between the Berthing 1 and Berthing 2 starboard

vestibules.

86.     Berthing Unit 2 has 42 racks. The racks are positioned in four rows and are in stacks of three, such that there is a bottom, middle, and top rack.

87.     All seven deceased Sailors' racks were located in rows 3 and 4, the rows nearest the starboard side hole in the *USS Fitzgerald's* hull. Fourteen of the 24 Sailors in these rows escaped Berthing Unit 2. None of the deceased Sailors were found in this area.

88.     The head (toilet) is located on the forward side of Berthing Unit 2. The door to the head opens inward.

## Known Information Concerning the *ACX Crystal* and its Operations at the Time of the Collision

89.     The *ACX Crystal* is a 730-foot long, 39,565-deadweight ton container ship that was launched on June 20, 2008.

90.     On June 17, 2017, the registered owner of the *ACX Crystal* was Olympic Steamship Co. S.A., a Panamanian corporation. Upon information and belief, Olympic Steamship Co. S.A. is a special purpose entity acting on behalf of Dainichi-Invest Co. Ltd., a Japanese company with its sole office in Kobe, Japan. Upon information and belief, Dainichi-Invest Co. Ltd. is an investment entity acting on behalf of the real beneficial owner of the *ACX Crystal*, which is NYK Line.

91.     As NYK Line itself stated in multiple press releases published on its website in the immediate aftermath of the collision, NYK Line was the sole charterer of the *ACX Crystal* on June 17, 2017.[22] Thus, upon information and belief, NYK Line engaged in and/or participated in

---

[22] *See* Exhibits 1-4

the negligent conduct that caused the injuries to the Plaintiffs in this action. In fact, NYK Line has publicly apologized for the collision.[23]

92.     Upon information and belief, as stated in the English translation of the JTSB Report, at the time of the collision an officer of the *ACX Crystal* was "a navigator of NYK Containr [sic] Line Co., Ltd." Further, according to the JTSB Report, NYK Container Line Co. Ltd. was the "operator" of the *ACX Crystal* on June 17, 2017.

93.     Upon information and belief, on June 17, 2017, Asia Container Express, known as ACX, employed the *ACX Crystal* for the purpose of shipping containers. Asia Container Express is the intra-Asia container shipping arm of NYK Line. Thus, on the date of the collision, NYK Line was involved in multiple ways in the operation and navigation of the *ACX Crystal*.

94.     In the minutes preceding the collision, the Crystal's Able-Bodied Seaman saw a vessel, the *USS Fitzgerald*, through his binoculars. He informed the Second Mate, who checked the radar.

95.     Despite knowledge that they were in a high-traffic area with approximately twenty-five vessels in a 20,000 yard radius, neither the Seaman nor the Second Mate nor anyone else involved in the operation of the *ACX Crystal* informed the *ACX Crystal*'s Master of the presence or course of the *USS Fitzgerald*, in violation of the *ACX Crystal*'s own Standing Orders. Neither they, nor anyone else involved in the operation of the *ACX Crystal*, altered their navigation course or attempted to contact the observed vessel at this time. Instead, the *ACX Crystal* simply stayed its course.

96.     At approximately 1:27 AM, just three minutes before the collision, the Second Mate flashed a signal light down the line of bearing toward the *USS Fitzgerald*. Despite taking

---

[23] *See* Exhibit 1

this action, he did not sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road.

97. At approximately 1:29 AM, just one minute before the collision, the Second Mate, flashed a second light down the line of bearing toward the *USS Fitzgerald*. At the same time, he took the *ACX Crystal* off of autopilot and attempted to perform very tardy evasive maneuvers in order to avoid the collision.

98. According to the report titled *Investigation into the Collision at Sea Between USS Fitzgerald (DDG 62) and ACX Crystal on or about 17 June 2017* released by the United States Department of the Navy dated 19 December 2017 (henceforth, "Navy Report"),

**CRYSTAL Bridge watchstanders . . . did not contact the Master prior to the collision, did not sound at least five short blasts, and made no attempt to hail FTZ [Fitzgerald] via bridge-to-bridge radio. CRYSTAL's navigation lights were illuminated, and CRYSTAL was in autopilot until just prior to impact. Prior to the collision, CRYSTAL watchstanders came out of autopilot and initiated a turn to starboard, too late to have adequate effect.**

99. Because of these and other failures of the *ACX Crystal* and its crew, the bow of the *ACX Crystal* collided with the *USS Fitzgerald* on its starboard side at a high rate of speed.

100. The Navy Report concluded that one of the "root causes" of the collision was the fact that "CRYSTAL's Second Officer demonstrated poor seamanship contrary to the International Rules of the Road." Specifically, according to the Report's conclusions about the *ACX Crystal*'s Second Officer:

  a. "He failed to maintain a proper lookout so as to make a full appraisal of the risk of collision with FTZ.

b.  He failed to determine if a risk of collision with FTZ existed by using all available means.

c.  He failed to appreciate, by radar or visual observation, that FTZ was on a constant bearing with a decreasing range, which observation would have led him to deem risk of collision to exist.

d.  With ample time available to take positive action to avoid collision, he failed to take any such action.

e.  He failed to maintain course and speed by turning to port (in accordance with CRYSTAL's voyage plan) despite the risk of collision.

f.  He failed to take action to avoid collision once it became apparent that action by FTZ alone would not avoid the collision.

g.  He failed to give at least five short and rapid blasts on CRYSTAL's whistle once in doubt as to whether FTZ was taking action to avoid collision.

h.  In addition, the Second Officer failed to follow CRYSTAL's Standing Orders by failing to call the Master when FTZ's CPA was within one nautical mile and failing to take frequent and accurate compass bearings of FTZ to detect the risk of collision."

**Damage to the *USS Fitzgerald***

101.  The *ACX Crystal*'s bulbous bow impacted the *USS Fitzgerald* below the waterline just aft of Berthing Unit 2, creating a hole in the hull that was approximately 13' x 17'. The *ACX Crystal* also breached the forward bulkhead of Auxiliary Machine Room 1 (AUX 1).

102.  Above the waterline, Crystal's port bow impacted the *USS Fitzgerald*'s superstructure from the second level down to the main deck, severely deforming it.



*Figure 4: Front view of damage to USS Fitzgerald above waterline*

103.    Berthing Unit 2 was ***completely flooded*** within two minutes of the collision as a direct result of the impact.

104.    During a post-collision assessment of the Berthing 2 space, it was discovered that many Berthing 2 lockers became unsecured immediately following the collision. In addition, several racks had detached. In particular, the inboard racks of rows 3 and 4 appear to have completely detached from the overhead and collapsed in the space.



*Figure 5: Berthing Unit 2 racks post de-flooding*



*Figure 6: Starboard side of Berthing Unit 2 looking forward to aft from the Chief Petty Officer Gear Locker through the lounge area to the vestibule*

105.    Auxiliary Machinery Room Number 1 was completely flooded as a result of the collision. A 12' x 12' hole was reported in AUX1.

106.    Berthing Unit 1 was partially flooded (five feet of water on deck) as a result of the collision.

107.    According to the Navy Report, there was significant structural damage to the Commanding Officer's Cabin, Repair Locker Number 2 passageway, Combat Information Center passageway, multiple Radar and Radar array rooms, fan rooms, Combat Systems Maintenance Central airlock and ladder-well, Electronic Workshop Number 1, and the Starboard Break.

108.    The damage to the *USS Fitzgerald* as a whole was extensive, with a total estimated repair cost of ***$368.7 million***.[24]

109.    At the time of the collision, all Plaintiffs in this Complaint were in areas of the *USS Fitzgerald* dangerously affected by the collision. All Plaintiffs in the Complaint suffered serious physical and psychological injuries as a direct result of the collision and the actions they had to take to save their own lives and the lives of others.

---

[24] USNI News, "USS Fitzgerald Back in Yokosuka After Suffering Damage During Transit" (November 27, 2017), https://news.usni.org/2017/11/27/uss-fitzgerald-back-yokosuka-suffering-damage-transit/ (accessed Nov. 1, 2019).



*Figure 7: Side view of damage to USS Fitzgerald above waterline*

**Narrative of Berthing Unit 2**

110.    Immediately after the collision, water began pouring into Berthing Unit 2. Some Sailors were jolted awake and thrown from their racks. Several witnesses recall rapidly rising water and a wall of water rushing toward them. The water pressure was so intense that several Sailors were pulled away from the port-side scuttle exit by the rushing water. The only light source was ambient light from the scuttle. Many Sailors were swimming to reach the port-side ladder to exit the unit as the water level rose first to their necks, and then above their heads.

111.    Surviving Sailors also recalled seeing lockers, mattresses, and other debris floating into the aisles between the racks, making it difficult for them to exit the unit speedily and safely.

26

112.    Two Sailors, including Plaintiff Joshua Tapia, waited at the bottom of the port-side ladder and pushed people through the scuttle. When the water level rose to a level such that they were no longer able to stand, they egressed themselves.

113.    Plaintiff Tapia and the other Sailor waited in the vestibule above the port-side of Berthing Unit 2 and pulled Sailors, including Plaintiff Jackson Schrimsher and Plaintiff John Mead, out of the scuttle. Eventually, water began pouring out of Berthing 2 into the above vestibule. Fearing for the structural integrity of the whole ship, the Sailors ultimately decided to close the scuttle, knowing that all of their shipmates were not accounted for.

114.    Ultimately, 27 Sailors escaped through the port-side scuttle.

115.    Plaintiff Schrimsher was the second-to-last man out of Berthing 2. He recalls a wall of water coming at him as he attempted to reach the port-side scuttle. He remembers a locker falling over onto him and a Sailor pushing him out from under it. By the time he reached the port-side scuttle, he was completely submerged. Plaintiff Schrimsher stuck his hand up out of the water through the scuttle, and was pulled to safety.

116.    Plaintiff Mead was the last man out of Berthing 2. The door to the head was open during the flooding, and the rush of the water into the space pulled Plaintiff Mead and another Sailor into the head. Plaintiff Mead stated that there were lockers floating into the door opening, which prevented him from exiting the head. He recalls being pushed from behind onto the locker so he could escape through the door.

117.    By the time Plaintiff Mead got on top of the locker, the water was inches away from the overhead. He fought his way to the port-side scuttle and was pulled to safety by Plaintiff Tapia and another Sailor. Plaintiff Tapia recalled that Plaintiff Mead's face was red and his eyes were bloodshot when he was pulled up.

27

118.    Plaintiff Rod Felderman was the only Sailor to escape from the starboard side of Berthing Unit 2.

119.    After the collision, Plaintiff Felderman jumped out of his rack, but the water was already chest high and rising. He recalled that there was a line to exit via the port-side egress, so he made his way to the starboard egress, which he soon discovered was blocked.

120.    Plaintiff Felderman stated that he dove under the water, feeling for a path. He stated he was kicking and slapping at debris in the darkness. Unable to find a clear path, he jumped up for air and slammed his head on the piping above. He pushed his face between the pipes, finding an air pocket just big enough to take a final breath. Then, Plaintiff Felderman dove down in the direction of the starboard door and swam towards the light coming from the starboard vestibule ladder. He was able to make it past the non-tight door on the starboard side and floated upwards, surfacing at the Berthing 1 starboard vestibule.

121.    When he was eventually found in Berthing 1, Plaintiff Felderman was in shock. He had seriously injured his head when he hit it on the pipes as he surfaced to gasp for air. He had also inhaled a large amount of seawater during his escape, and had multiple lacerations to his face, arms and legs.

122.    Seven (7) Sailors died from drowning in Berthing Unit 2, all of whom were located on the starboard side. At the time, the collision represented the largest loss of life for the United States Navy at sea since 1975.

## INJURIES TO THE PLAINTIFFS

**Plaintiff Jhon Alcide**

123.    Plaintiff Jhon Alcide, who was a Lieutenant (O-3), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count I—Negligence (Plaintiff Jhon Alcide)

*Respondeat Superior*

124.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

125.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

126.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

127.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

128.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

129.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

130.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

131.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

132.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

133.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Alcide suffered serious injuries to his back and neck while attempting to escape Berthing Unit 2. In addition to these physical injuries, Plaintiff Alcide has been diagnosed

with post-traumatic stress disorder (PTSD) and insomnia as a direct result of the collision and its aftermath. Plaintiff Alcide has and will continue to receive medical treatment for his injuries. Plaintiff Alcide's psychological injuries are permanent and he will suffer from them into the future.

134.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Alcide has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count II—Negligent Infliction of Emotional Distress (Plaintiff Jhon Alcide)

135.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

136.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Alcide in a zone of physical danger, which caused him to suffer serious injuries, and exposed him to the immediate risk of physical harm and death.

137.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

138.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

139.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Alcide suffered serious injuries to his back and neck while attempting to escape Berthing Unit 2. In addition to these physical injuries, Plaintiff Alcide has been diagnosed with post-traumatic stress disorder (PTSD) and insomnia as a direct result of the collision and its aftermath. Plaintiff Alcide has and will continue to receive medical treatment for his injuries. Plaintiff Alcide's psychological injuries are permanent and he will suffer from them into the future.

140.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Alcide has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count III—Negligent Entrustment of a Vessel and Negligent Hiring, Training and Supervision (Plaintiff Jhon Alcide)

141.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

142.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to

exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

143.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

144.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

145.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

146.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

147.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

        a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

148.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

149.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

150.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

151.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said

crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count IV—Gross Negligence/Recklessness (Plaintiff Jhon Alcide)**

152.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

153.    The damages and injuries from which Plaintiff Alcide has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Alcide. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

154.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

155.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Alcide suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Jhon Alcide demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Richard Allen-Easmon**

156.    Plaintiff Richard Allen-Easmon, who was a Petty Officer 2nd Class, was asleep in his rack in Berthing Unit 3 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

<div align="center">

**Count V−Negligence (Plaintiff Richard Allen-Easmon)**

*Respondeat Superior*

</div>

157.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

158.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

159.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

<div align="center">36</div>

160.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

161.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

162.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

163.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

164.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

165.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

166.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Allen-Easmon suffered injuries to his head while he was attempting to escape Berthing Unit 3. In addition to these physical injuries, Plaintiff Allen-Easmon has been diagnosed with PTSD as a direct result of the collision and its aftermath. Plaintiff Allen-Easmon has and will continue to receive medical treatment for his injuries. Plaintiff Allen-Easmon's psychological injuries are permanent and he will suffer from them into the future.

167.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Allen-Easmon has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count VI—Negligent Infliction of Emotional Distress (Plaintiff Richard Allen-Easmon)**

168.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

169.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Allen-Easmon in a zone of physical danger in which Plaintiff Allen-Easmon suffered serious injuries and exposed Plaintiff Allen-Easmon to the immediate risk of physical harm and death.

170.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

171.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

172.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Allen-Easmon suffered injuries to his head while he was attempting to escape Berthing Unit 3. In addition to these physical injuries, Plaintiff Allen-Easmon has been diagnosed with PTSD as a direct result of the collision and its aftermath. Plaintiff Allen-Easmon has and will continue to receive medical treatment for his injuries. Plaintiff Allen-Easmon's psychological injuries are permanent and he will suffer from them into the future.

173.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Allen-Easmon has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count VII–Negligent Entrustment of a Vessel and Negligent Hiring, Training and Supervision (Plaintiff Richard Allen-Easmon)

174.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

175.     Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

176.     NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

177.     NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

178.     NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

179.     Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

180.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

181.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

182.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

183.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX*

*Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

184.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count VIII—Gross Negligence/Recklessness (Plaintiff Richard Allen-Easmon)

185.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

186.    The damages and injuries from which Plaintiff Allen-Easmon has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Alcide. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

a.   Failure to contact the Master prior to the collision;

b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

42

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

187.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

188.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Allen-Easmon suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Richard Allen-Easmon demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Dustin Angle**

189.    Plaintiff Dustin Angle, who was a Petty Officer 1st Class (E-6), was in the Command Information Center of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

**Count IX—Negligence (Plaintiff Dustin Angle)**

*Respondeat Superior*

190.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

191.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

192.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

193.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

194.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

195.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

196.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

197.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

198.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

199.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Angle suffered physical injuries while in the Command Information Center. In addition to these physical injuries, Plaintiff Angle has been diagnosed with stress-related trauma and panic attacks as a direct result of the collision and its aftermath. Plaintiff Angle has had and will continue to receive medical treatment for his injuries. Plaintiff Angle psychological injuries are permanent and he will suffer from them into the future.

200.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Angle has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count X—Negligent Infliction of Emotional Distress (Plaintiff Dustin Angle)

201.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

202.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Angle in a zone of physical danger in which Plaintiff Angle suffered serious injuries and exposed Plaintiff Angle to the immediate risk of physical harm and death.

203.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

204.  As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

205.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Angle suffered physical injuries while in the Command Information Center. In addition to these physical injuries, Plaintiff Angle has been diagnosed with stress-related trauma and panic attacks as a direct result of the collision and its aftermath. Plaintiff Angle has had and will continue to receive medical treatment for his injuries. Plaintiff Angle psychological injuries are permanent and he will suffer from them into the future.

206.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Angle has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will

continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Dustin Angle)

207.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

208.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

209.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

210.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

211.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

212.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The

47

lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

213.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.  Failure to contact the Master prior to the collision;

      b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.  Failure to take the vessel out of autopilot until just prior to impact;

      e.  Failure to perform timely evasive maneuvering to avoid collision;

      f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

214.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

215.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

216.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

217.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

<u>**Count XII—Gross Negligence/Recklessness (Plaintiff Dustin Angle)**</u>

218.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

219.    The damages and injuries from which Plaintiff Angle has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Angle. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

a.    Failure to contact the Master prior to the collision;

b.    Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.    Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

49

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

220.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

221.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Angle suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Dustin Angle demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Count XIII—Loss of Consortium (Plaintiff Meghan Hrncir)

222.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

223.   At the time of this incident, Dustin Angle was married to Meghan Hrncir.

224.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Meghan Hrncir has suffered and will continue to suffer from a loss of

consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Dustin Angle.

225.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Meghan Hrncir demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Jesus Arguello**

226.   Plaintiff Jesus Arguello, who was a Petty Officer 2nd Class (E-5), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count XIV—Negligence (Plaintiff Jesus Arguello)

*Respondeat Superior*

227.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

228.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

229.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

230.     It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

231.     Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

232.     At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

233.     At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

234.     The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

235.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

236.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Arguello suffered physical injuries while attempting to escape Berthing Unit 2. In addition to these physical injuries, Plaintiff Arguello has been diagnosed with severe PTSD as a result of nearly drowning in Berthing Unit 2. Plaintiff Arguello suffers from constant headaches as a result of the collision. Plaintiff Arguello has and will continue to receive medical treatment for his injuries. Plaintiff Arguello's psychological injuries are permanent and he will suffer from them into the future.

237.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Arguello has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XV—Negligent Infliction of Emotional Distress (Plaintiff Jesus Arguello)

238.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

239.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Arguello in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

240.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

241.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

242.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Arguello suffered physical injuries while attempting to escape Berthing Unit 2. In addition to these physical injuries, Plaintiff Arguello has been diagnosed with severe PTSD as a result of nearly drowning in Berthing Unit 2. Plaintiff Arguello suffers from constant headaches as a result of the collision. Plaintiff Arguello has and will continue to receive medical treatment for his injuries. Plaintiff Arguello's psychological injuries are permanent and he will suffer from them into the future.

243.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Arguello has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical

54

treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XVI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Jesus Arguello)

244.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

245.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

246.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

247.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

248.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

249.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's

(and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

250.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

251.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

252.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

253.     Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

254.     As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count XVII—Gross Negligence/Recklessness (Plaintiff Jesus Arguello)

255.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

256.     The damages and injuries from which Plaintiff Arguello has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Arguello. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

h.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

257.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

258.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Arguello suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Jesus Arguello demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count XVIII—Loss of Consortium (Plaintiff Valerie Arguello)

259.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

260.   At the time of this incident, Jesus Arguello was married to Valerie Arguello

261.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Valerie Arguello has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Jesus Arguello.

262.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Valerie Arguello demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Francis Asuncion**

263.   Plaintiff Francis Asuncion, who was a Chief Petty Officer (E-7), was located in the Forward Chief Petty Officer Mess of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

<div align="center">

**Count XIX—Negligence (Plaintiff Francis Asuncion)**

*Respondeat Superior*

</div>

264.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

265.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

266.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

267.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

268.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

269.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

270.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

271.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

a.   Failure to contact the Master prior to the collision;

b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

272.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

273.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Asuncion suffered physical injuries from the collision. In addition to these physical injuries, Plaintiff Asuncion has been diagnosed with severe PTSD, major depressive disorder, and insomnia. Plaintiff Asuncion suffers from constant migraines, tinnitus, suicidal ideations, panic attacks, and other disorders as a direct result of the collision and its aftermath. Plaintiff Asuncion has had and will continue to receive medical treatment for his injuries. Plaintiff Asuncion's injuries are permanent and he will suffer from them into the future.

274.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Asuncion has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count XX—Negligent Infliction of Emotional Distress (Plaintiff Francis Asuncion)**

275.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

276.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Asuncion in a zone of physical danger, which caused him to suffer serious injuries, and exposed him to the immediate risk of physical harm and death.

277.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal*

would collide with another vessel and cause serious emotional, mental, and psychological distress.

278.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

279.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Asuncion suffered physical injuries from the collision. In addition to these physical injuries, Plaintiff Asuncion has been diagnosed with severe PTSD, major depressive disorder, and insomnia. Plaintiff Asuncion suffers from constant migraines, tinnitus, suicidal ideations, panic attacks, and other disorders as a direct result of the collision and its aftermath. Plaintiff Asuncion has had and will continue to receive medical treatment for his injuries. Plaintiff Asuncion's injuries are permanent and he will suffer from them into the future.

280.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Asuncion has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Francis Asuncion)

281.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

282.     Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

283.     NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

284.     NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

285.     NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

286.     Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

287.     Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

63

a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

288.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

289.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

290.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

291.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said

crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count XXII—Gross Negligence/Recklessness (Plaintiff Francis Asuncion)

292.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

293.    The damages and injuries from which Plaintiff Asuncion has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Asuncion. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

      a.  Failure to contact the Master prior to the collision;

      b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.  Failure to take the vessel out of autopilot until just prior to impact;

      e.  Failure to perform timely evasive maneuvering to avoid collision;

      f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

294.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

295.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Asuncion suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Francis Asuncion demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count XXIII—Loss of Consortium (Plaintiff Marissa Asuncion)

296.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

297.    At the time of this incident, Francis Asuncion was married to Marissa Asuncion.

298.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Marissa Asuncion has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Francis Asuncion.

299.    This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Marissa Asuncion demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Sascha Belin**

300.    Plaintiff Sascha Belin, who was a Seaman Recruit (E-1), was located in the bathroom of Berthing Unit 4 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count XXIV—Negligence (Plaintiff Sascha Belin)

*Respondeat Superior*

301.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

302.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

303.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

304.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

305.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

306.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

307.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

308.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

309.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

310.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Belin has been diagnosed with a severe reaction to stress due to the collision and its aftermath. Plaintiff Belin has had and will continue to receive medical treatment for her psychological injuries. Plaintiff Belin's psychological injuries are permanent and she will suffer from them into the future.

311.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Belin has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXV—Negligent Infliction of Emotional Distress (Plaintiff Sascha Belin)

312.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

313.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Belin in a zone of physical danger, which caused her to suffer serious injuries and exposed her to the immediate risk of physical harm and death.

314.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

315.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

316.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Belin has been diagnosed with a severe reaction to stress due to the collision

and its aftermath. Plaintiff Belin has had and will continue to receive medical treatment for her psychological injuries. Plaintiff Belin's psychological injuries are permanent and she will suffer from them into the future.

317. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Belin has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXVI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Sascha Belin)

318. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

319. Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

320. NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

321.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

322.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

323.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

324.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

325. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

326. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

327. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

328. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count XXVII—Gross Negligence/Recklessness (Plaintiff Sascha Belin)**

329. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

330. The damages and injuries from which Plaintiff Belin has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional

disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Belin. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

      a.  Failure to contact the Master prior to the collision;

      b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.  Failure to take the vessel out of autopilot until just prior to impact;

      e.  Failure to perform timely evasive maneuvering to avoid collision;

      f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

331. The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

332. As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Belin suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Sascha Belin demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Lehonard Bienaime**

333.    Plaintiff Lehonard Bienaime, who was a Seaman (E-3), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count XXVIII—Negligence (Plaintiff Lehonard Bienaime)

### *Respondeat Superior*

334.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

335.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

336.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

337.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

338.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

339.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

340.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

341.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

342.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

343.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Bienaime was diagnosed with PTSD and insomnia due to the collision and its aftermath, and has attempted suicide. Plaintiff Bienaime has had medical treatment for his psychological injuries. Plaintiff Bienaime's psychological injuries are permanent and he will suffer from them into the future.

344.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Bienaime has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXIX—Negligent Infliction of Emotional Distress (Plaintiff Lehonard Bienaime)

345.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

346.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Bienaime in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

347.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

348.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

349.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Bienaime was diagnosed with PTSD and insomnia due to the collision and its aftermath, and has attempted suicide. Plaintiff Bienaime has had medical treatment for his

psychological injuries. Plaintiff Bienaime's psychological injuries are permanent and he will suffer from them into the future.

350.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Bienaime has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXX—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Lehonard Bienaime)

351.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

352.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

353.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

354.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

355.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

356.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

357.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

358.     Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

359.     NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

360.     Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

361.     As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### **Count XXXI—Gross Negligence/Recklessness (Plaintiff Lehonard Bienaime)**

362.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

363.     The damages and injuries from which Plaintiff Bienaime has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Bienaime. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

a.   Failure to contact the Master prior to the collision;

b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

364.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

365.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Bienaime suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Lehonard Bienaime demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Count XXXII—Loss of Consortium (Plaintiff Leeann Bienaime)

366.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

80

367.    At the time of this incident, Lehonard Bienaime was married to Leeann Bienaime.

368.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Leeann Bienaime has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Lehonard Bienaime.

369.    This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Leeann Bienaime demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Deonte Carter**

370.    Plaintiff Deonte Carter, who was a Petty Officer 2nd Class (E-5), was located in the Forward Interior Communications Space of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

**Count XXXIII—Negligence (Plaintiff Deonte Carter)**

*Respondeat Superior*

371.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

372.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

373.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of

the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

374.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

375.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

376.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

377.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

378.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

379.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

380.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Carter suffered severe physical injuries from the collision, including a severely compressed L5/S1 nerve root in his back through his right hip and leg and permanent non-union fracture of his wrist. In addition to these physical injuries, Plaintiff Carter has been diagnosed with severe PTSD and other psychological disorders. Plaintiff Carter has had and will continue to receive medical treatment for both his physical and psychological injuries, including significant time for outpatient psychological treatment and physical therapy. Plaintiff Carter's psychological injuries are permanent and he will suffer from them into the future.

381.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Carter has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count XXXIV—Negligent Infliction of Emotional Distress (Plaintiff Deonte Carter)**

382.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

383.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Carter in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

384.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

385.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

386.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Carter suffered severe physical injuries from the collision, including a severely compressed L5/S1 nerve root in his back through his right hip and leg and permanent non-union fracture of his wrist. In addition to these physical injuries, Plaintiff Carter has been diagnosed with severe PTSD and other psychological disorders. Plaintiff Carter has had and will continue to receive medical treatment for both his physical and psychological injuries, including significant time for outpatient psychological treatment and physical therapy. Plaintiff Carter's psychological injuries are permanent and he will suffer from them into the future.

387.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Carter has suffered and will continue to suffer from extreme conscious

physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXXV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Deonte Carter)

388.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

389.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

390.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

391.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

392.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

393.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

394.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

  a.  Failure to contact the Master prior to the collision;

  b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

  c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

  d.  Failure to take the vessel out of autopilot until just prior to impact;

  e.  Failure to perform timely evasive maneuvering to avoid collision;

  f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

  g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

395.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew

would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

396.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

397.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

398.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count XXXVI—Gross Negligence/Recklessness (Plaintiff Deonte Carter)

399.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

400.    The damages and injuries from which Plaintiff Carter has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Carter. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

a.   Failure to contact the Master prior to the collision;

b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d. Failure to take the vessel out of autopilot until just prior to impact;

e. Failure to perform timely evasive maneuvering to avoid collision;

f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

401.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

402.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Carter suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Deonte Carter demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Plaintiff Carlos Clark

403.    Plaintiff Carlos Clark, who was a Petty Officer 1st Class (E-6), was located on the bridge of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

88

## Count XXXVII—Negligence (Plaintiff Carlos Clark)

*Respondeat Superior*

404.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

405.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

406.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

407.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

408.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

409.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

410.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

411.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

412.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

413.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Clark suffered physical injuries from the collision. In addition to these physical injuries, Plaintiff Clark has been diagnosed with severe PTSD and anxiety. Additionally, Plaintiff Clark suffers from increasingly severe migraine headaches as a result of the collision. For both his physical and psychological injuries, Plaintiff Clark has had and will continue to receive medical treatment. Plaintiff Clark's injuries are permanent and he will suffer from them into the future.

414.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Clark has suffered and will continue to suffer from extreme conscious

physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXXVIII—Negligent Infliction of Emotional Distress (Plaintiff Carlos Clark)

415.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

416.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Clark in a zone of physical danger, which caused him to suffer injuries and exposed him to the immediate risk of physical harm and death.

417.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

418.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

419.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Clark suffered physical injuries from the collision. In addition to these physical injuries, Plaintiff Clark has been diagnosed with severe PTSD and anxiety. Additionally, Plaintiff Clark suffers from increasingly severe migraine headaches as a result of

the collision. For both his physical and psychological injuries, Plaintiff Clark has had and will continue to receive medical treatment. Plaintiff Clark's injuries are permanent and he will suffer from them into the future.

420.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Clark has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XXXIX—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Carlos Clark)

421.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

422.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

423.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

424.     NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

425.     NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

426.     Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

427.     Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

428.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

429.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

430.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

431.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count XL—Gross Negligence/Recklessness (Plaintiff Carlos Clark)**

432.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

433.    The damages and injuries from which Plaintiff Clark has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional

disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Clark. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

        a.   Failure to contact the Master prior to the collision;

        b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

        c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

        d.   Failure to take the vessel out of autopilot until just prior to impact;

        e.   Failure to perform timely evasive maneuvering to avoid collision;

        f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

        g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

434.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

435.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Clark suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Carlos Clark demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## <u>Count XLI—Loss of Consortium (Plaintiff Ciera Clark)</u>

436.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

437.    At the time of this incident, Carlos Clark was married to Ciera Clark.

438.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Ciera Clark has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Carlos Clark.

439.    This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Ciera Clark demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

## <u>Plaintiff Rod Felderman</u>

440.    Plaintiff Rod Felderman, who was a Petty Officer 2nd Class (E-5), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## <u>Count XLII—Negligence (Plaintiff Rod Felderman)</u>

*Respondeat Superior*

441.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

442.     Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

443.     NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

444.     It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

445.     Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

446.     At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

447.     At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

448.     The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

     a.   Failure to contact the Master prior to the collision;

b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

449.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

450.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Felderman suffered severe physical injuries from the collision, including multiple lacerations to his face, arms, and left ankle, as well as a traumatic brain injury. While attempting to escape Berthing Unit 2, Plaintiff Felderman nearly drowned, and a large amount of seawater entered his lungs. In addition to these physical injuries, Plaintiff Felderman has been diagnosed with severe PTSD. Plaintiff Felderman has had and will continue to receive medical treatment for his injuries. Plaintiff Felderman's injuries are permanent and he will suffer from them into the future.

451.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Felderman has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will

continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XLIII—Negligent Infliction of Emotional Distress (Plaintiff Rod Felderman)

452.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

453.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Felderman in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

454.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

455.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald.* Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

456.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Felderman suffered severe physical injuries from the collision, including multiple lacerations to his face, arms, and left ankle, as well as a traumatic brain injury. While attempting to escape Berthing Unit 2, Plaintiff Felderman nearly drowned, and a large amount of seawater entered his lungs. In addition to these physical injuries, Plaintiff Felderman has been diagnosed with severe PTSD. Plaintiff Felderman has had and will continue to receive medical

treatment for his injuries. Plaintiff Felderman's injuries are permanent and he will suffer from them into the future.

457.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Felderman has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XLIV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Rod Felderman)

458.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

459.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

460.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

461.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

462.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

463.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

464.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

465.     Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

466.     NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

467.     Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

468.     As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count XLV—Gross Negligence/Recklessness (Plaintiff Rod Felderman)

469.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

470.     The damages and injuries from which Plaintiff Felderman has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional

disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Felderman. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

471.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

472.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Felderman suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Rod Felderman demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Count XLVI—Loss of Consortium (Plaintiff Liz Felderman)

473.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

474.    At the time of this incident, Rod Felderman was married to Liz Felderman.

475.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Liz Felderman has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Rod Felderman.

476.    This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Liz Felderman demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

## Plaintiff Casey Frenzel

477.    Plaintiff Casey Frenzel, who was a Petty Officer 2nd Class (E-5), was located in the Nixie Room of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count XLVII—Negligence (Plaintiff Casey Frenzel)

### *Respondeat Superior*

478.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

479.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

480.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

481.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

482.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

483.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

484.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

485.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

486. As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

487. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Frenzel suffered physical injuries from the collision, including injuries to her head and body. In addition to these physical injuries, Plaintiff Frenzel suffers from PTSD, panic attacks, nightmares, insomnia, and depression. Plaintiff Frenzel has and will continue to receive medical treatment for her injuries. Plaintiff Frenzel's injuries are permanent and she will suffer from them into the future.

488. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Frenzel has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count XLVIII—Negligent Infliction of Emotional Distress (Plaintiff Casey Frenzel)**

489.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

490.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Frenzel in a zone of physical danger, which caused her to suffer serious injuries and exposed her to the immediate risk of physical harm and death.

491.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

492.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

493.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Frenzel suffered physical injuries from the collision, including injuries to her head and body. In addition to these physical injuries, Plaintiff Frenzel suffers from PTSD, panic attacks, nightmares, insomnia, and depression. Plaintiff Frenzel has and will continue to receive medical treatment for her injuries. Plaintiff Frenzel's injuries are permanent and she will suffer from them into the future.

494.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Frenzel has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will

continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XLIX—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Casey Frenzel)

495.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

496.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

497.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

498.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

499.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

500.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The

lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

501.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

502.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

503.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

504.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

505.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count L—Gross Negligence/Recklessness (Plaintiff Casey Frenzel)

506.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

507.   The damages and injuries from which Plaintiff Frenzel has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Frenzel. NYK Line's grossly negligent conduct includes, but is not limited to, the following: Failure to contact the Master prior to the collision;

    a.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    b.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     c.    Failure to take the vessel out of autopilot until just prior to impact;

     d.    Failure to perform timely evasive maneuvering to avoid collision;

     e.    Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

     f.    Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

508.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

509.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Frenzel suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Casey Frenzel demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Plaintiff Richard Gant

510.    Plaintiff Richard Gant, who was a Petty Officer 2nd Class (E-5), was located outside on a deck of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count LI—Negligence (Plaintiff Richard Gant)

*Respondeat Superior*

511.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

512.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

513.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

514.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

515.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

516.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

517.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

518.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

      a.  Failure to contact the Master prior to the collision;

112

b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d. Failure to take the vessel out of autopilot until just prior to impact;

e. Failure to perform timely evasive maneuvering to avoid collision;

f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

519.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

520.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gant was diagnosed with severe PTSD. He also suffers from obstructive sleep apnea. Plaintiff Gant has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff Gant's injuries are permanent and he will suffer from them into the future.

521.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gant has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical

treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LII—Negligent Infliction of Emotional Distress (Plaintiff Richard Gant)

522.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

523.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Gant in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

524.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

525.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

526.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gant was diagnosed with severe PTSD. He also suffers from obstructive sleep apnea. Plaintiff Gant has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff Gant's injuries are permanent and he will suffer from them into the future.

527.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gant has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant

emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Richard Gant)

528.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

529.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

530.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

531.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

532.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

533.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not

competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

534. Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a. Failure to contact the Master prior to the collision;

   b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d. Failure to take the vessel out of autopilot until just prior to impact;

   e. Failure to perform timely evasive maneuvering to avoid collision;

   f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

535. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

536.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

537.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

538.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LIV—Gross Negligence/Recklessness (Plaintiff Richard Gant)

539.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

540.   The damages and injuries from which Plaintiff Gant has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Gant. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

541.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

542.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Gant suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Richard Gant demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count LV—Loss of Consortium (Plaintiff Samantha Gant)

543.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

544.    At the time of this incident, Richard Gant was married to Samantha Gant.

545.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Samantha Gant has suffered and will continue to suffer from a loss of

consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Richard Gant.

546.    This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Samantha Gant demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Rollin George**

547.    Plaintiff Rollin George, who was an Ensign (O-1) and he was stationed on the *USS Fitzgerald*. When the *ACX Crystal* collided with the *USS Fitzgerald*, Plaintiff George was located in a Stateroom of the *USS Fitzgerald*.

**Count LVI—Negligence (Plaintiff Rollin George)**

*Respondeat Superior*

548.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

549.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

550.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

551.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

552.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

553.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

554.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

555.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

556.     As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

557.     As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff George suffered serious injuries. Plaintiff George has been diagnosed with severe PTSD as a direct result of the collision and its aftermath. Plaintiff George has had and will continue to receive medical treatment for his injuries. Plaintiff George's injuries are permanent and he will suffer from them into the future.

558.     As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff George has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count LVII—Negligent Infliction of Emotional Distress (Plaintiff Rollin George)**

559.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

560.     The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff George in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

561.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

562.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

563.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff George suffered serious injuries. Plaintiff George has been diagnosed with severe PTSD as a direct result of the collision and its aftermath. Plaintiff George has had and will continue to receive medical treatment for his injuries. Plaintiff George's injuries are permanent and he will suffer from them into the future.

564.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff George has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count LVIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Rollin George)

565.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

122

566.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

567.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

568.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

569.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

570.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

571.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

572.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

573.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

574.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

575.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said

crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LIX—Gross Negligence/Recklessness (Plaintiff Rollin George)

576.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

577.    The damages and injuries from which Plaintiff George has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff George. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

      a.  Failure to contact the Master prior to the collision;

      b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.  Failure to take the vessel out of autopilot until just prior to impact;

      e.  Failure to perform timely evasive maneuvering to avoid collision;

      f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

578.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

579.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff George suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Rollin George demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count LX—Loss of Consortium (Plaintiff Marnitta George)

580.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

581.    At the time of this incident, Rollin George was married to Marnitta George.

582.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Marnitta George has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Rollin George.

583.    This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Marnitta George demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Raul Gonzalez**

584.    Plaintiff Raul Gonzalez, who was a Petty Officer 3rd Class (E-4), was asleep in Berthing Unit 3 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count LXI—Negligence (Plaintiff Raul Gonzalez)

*Respondeat Superior*

585.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

586.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

587.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

588.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

589.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

590.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

591.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

592.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

593.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

594.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gonzalez suffered physical injuries from the collision, including painful injuries to his back and head. In addition to these physical injuries, Plaintiff Gonzalez has been diagnosed with severe PTSD and other disorders. Plaintiff Gonzalez has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Gonzalez's injuries are permanent and he will suffer from them into the future.

128

595.     As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gonzalez has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count LXII—Negligent Infliction of Emotional Distress (Plaintiff Raul Gonzalez)**

596.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

597.     The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Gonzalez in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

598.     It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

599.     As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

600.     As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gonzalez suffered physical injuries from the collision, including painful

injuries to his back and head. In addition to these physical injuries, Plaintiff Gonzalez has been diagnosed with severe PTSD and other disorders. Plaintiff Gonzalez has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Gonzalez's injuries are permanent and he will suffer from them into the future.

601.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Gonzalez has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LXIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Raul Gonzalez)

602.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

603.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

604.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to

any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

605. NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

606. NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

607. Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

608. Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a. Failure to contact the Master prior to the collision;

    b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d. Failure to take the vessel out of autopilot until just prior to impact;

    e. Failure to perform timely evasive maneuvering to avoid collision;

    f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

609.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

610.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

611.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

612.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LXIV—Gross Negligence/Recklessness (Plaintiff Raul Gonzalez)

613.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

614.   The damages and injuries from which Plaintiff Gonzalez has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional

disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Gonzalez. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

615.     The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

616.     As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Gonzalez suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Raul Gonzalez demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count LXV—Loss of Consortium (Plaintiff Lindsay Gonzalez)

617.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

618.    At the time of this incident, Raul Gonzalez was married to Lindsay Gonzalez.

619.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Lindsay Gonzalez has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Raul Gonzalez.

620.    This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Lindsay Gonzalez demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

### Plaintiff Rainford Graham

621.    Plaintiff Rainford Graham, who was a Petty Officer 1st Class (E-6), was located in the Command Information Center of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count LXVI—Negligence (Plaintiff Rainford Graham)

*Respondeat Superior*

622.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

623.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

624.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

625.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

626.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

627.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

628.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

629.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

      a.  Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

630.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

631.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Graham suffered physical injuries from the collision. In addition to these physical injuries, Plaintiff Graham has been diagnosed with severe PTSD, insomnia, depression, and anxiety. Plaintiff Graham has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Graham's injuries are permanent and he will suffer from them into the future.

632.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Graham has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical

treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count LXVII—Negligent Infliction of Emotional Distress (Plaintiff Rainford Graham)**

633.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

634.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Graham in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

635.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

636.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

637.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Graham suffered physical injuries from the collision. In addition to these physical injuries, Plaintiff Graham has been diagnosed with severe PTSD, insomnia, depression, and anxiety. Plaintiff Graham has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Graham's injuries are permanent and he will suffer from them into the future.

638.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Graham has suffered and will continue to suffer from extreme conscious

physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LXVIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Rainford Graham)

639.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

640.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

641.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

642.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

643.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

644.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

645.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

646.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew

would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

647.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

648.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

649.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LXIX—Gross Negligence/Recklessness (Plaintiff Rainford Graham)

650.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

651.    The damages and injuries from which Plaintiff Graham has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Graham. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.   Failure to take the vessel out of autopilot until just prior to impact;

     e.   Failure to perform timely evasive maneuvering to avoid collision;

     f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

     g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

652.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

653.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Graham suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Rainford Graham demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Terry Guidry**

654.    Plaintiff Terry Guidry, who was a Petty Officer 1st Class (E-6), was asleep in Berthing Unit 1 of the *USS Fitzgerald* at the time it was struck by the *ACX Crystal*.

## Count LXX—Negligence (Plaintiff Terry Guidry)

*Respondeat Superior*

655.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

656.     Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

657.     NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

658.     It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

659.     Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

660.     At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

661.     At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

662.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

663.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

664.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Guidry suffered severe physical injuries from the collision, including a head injury. Additionally, upon information and belief, Plaintiff Guidry also suffers from significant cardiac issues related to the collision. In addition to these physical injuries, Plaintiff Guidry has been diagnosed with severe PTSD and insomnia. Plaintiff Guidry has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Guidry's injuries are permanent and he will suffer from them into the future.

665.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Guidry has suffered and will continue to suffer from extreme conscious

physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LXXI—Negligent Infliction of Emotional Distress (Plaintiff Terry Guidry)

666.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

667.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Guidry in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

668.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

669.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

670.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Guidry suffered severe physical injuries from the collision, including a head injury. Additionally, upon information and belief, Plaintiff Guidry also suffers from significant cardiac issues related to the collision. In addition to these physical injuries, Plaintiff Guidry has been diagnosed with severe PTSD and insomnia. Plaintiff Guidry has had and will continue to

receive medical and psychological treatment for his injuries. Plaintiff Guidry's injuries are permanent and he will suffer from them into the future.

671.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Guidry has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LXXII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Terry Guidry)

672.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

673.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

674.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

145

675.     NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

676.     NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

677.     Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

678.     Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

679.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

680.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

681.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

682.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LXXIII—Gross Negligence/Recklessness (Plaintiff Terry Guidry)

683.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

684.    The damages and injuries from which Plaintiff Guidry has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional

disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Guidry. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

      a.  Failure to contact the Master prior to the collision;

      b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.  Failure to take the vessel out of autopilot until just prior to impact;

      e.  Failure to perform timely evasive maneuvering to avoid collision;

      f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

685.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

686.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Guidry suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Terry Guidry demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Sherria Hughley**

687.    Plaintiff Sherria Hughley, who was a Petty Officer 2nd Class (E-5), was asleep in her rack in an all-female Berthing Unit of the *USS Fitzgerald* at the time it was struck by the *ACX Crystal*.

<div align="center">

**Count LXXIV—Negligence (Plaintiff Sherria Hughley)**

*Respondeat Superior*

</div>

688.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

689.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

690.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

691.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

692.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

<div align="center">149</div>

693.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

694.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

695.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

696.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

697.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Hughley has been diagnosed with severe PTSD, anxiety, and depression. Plaintiff Hughley has had and will continue to receive medical and psychological treatment for

her injuries. Plaintiff Hughley's injuries are permanent and she will suffer from them into the future.

698. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Hughley has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count LXXV—Negligent Infliction of Emotional Distress (Plaintiff Sherria Hughley)**

699. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

700. The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Hughley in a zone of physical danger, which caused her to suffer serious injuries and exposed her to the immediate risk of physical harm and death.

701. It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

702. As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

151

703. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Hughley has been diagnosed with severe PTSD, anxiety, and depression. Plaintiff Hughley has had and will continue to receive medical and psychological treatment for her injuries. Plaintiff Hughley's injuries are permanent and she will suffer from them into the future.

704. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Hughley has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LXXVI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Sherria Hughley)

705. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

706. Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

707. NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to

any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

708.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

709.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

710.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

711.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

712.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

713.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

714.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

715.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LXXVII—Gross Negligence/Recklessness (Plaintiff Sherria Hughley)

716.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

717.   The damages and injuries from which Plaintiff Hughley has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct.

The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Hughley. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a. Failure to contact the Master prior to the collision;

    b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d. Failure to take the vessel out of autopilot until just prior to impact;

    e. Failure to perform timely evasive maneuvering to avoid collision;

    f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

718.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

719.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Hughley suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Sherria Hughley demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Jermaine Jones**

720.    Plaintiff Jermaine Jones, who was a Petty Officer 1st Class (E-6), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count LXXVIII—Negligence (Plaintiff Jermaine Jones)

*Respondeat Superior*

721.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

722.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

723.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

724.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

725.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

156

726.     At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

727.     At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

728.     The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a. Failure to contact the Master prior to the collision;

    b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d. Failure to take the vessel out of autopilot until just prior to impact;

    e. Failure to perform timely evasive maneuvering to avoid collision;

    f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

729.     As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

730.     As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Jones has been diagnosed with PTSD. Plaintiff Jones has had and will

continue to receive medical and psychological treatment for his injuries. Plaintiff Jones' injuries are permanent and he will suffer from them into the future.

731.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Jones has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count LXXIX—Negligent Infliction of Emotional Distress (Plaintiff Jermaine Jones)**

732.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

733.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Jones in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

734.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

735.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

736.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Jones has been diagnosed with PTSD. Plaintiff Jones has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Jones' injuries are permanent and he will suffer from them into the future.

737.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Jones has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count LXXX—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Jermaine Jones)

738.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

739.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

740.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to

any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

741.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

742.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

743.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

744.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

745.  Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

746.  NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

747.  Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

748.  As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LXXXI—Gross Negligence/Recklessness (Plaintiff Jermaine Jones)

749.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

750.  The damages and injuries from which Plaintiff Jones has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct.

The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Jones. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a. Failure to contact the Master prior to the collision;

   b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d. Failure to take the vessel out of autopilot until just prior to impact;

   e. Failure to perform timely evasive maneuvering to avoid collision;

   f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

751.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

752.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Jones suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Jermaine Jones demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### <u>Count LXXXII—Loss of Consortium (Plaintiff Lakitra Burns-Jones)</u>

753.   Plaintiff hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

754.   At the time of this incident, Jermaine Jones was married to Lakitra Burns-Jones.

755.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Lakitra Burns-Jones has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Jermaine Jones.

756.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Lakitra Burns-Jones demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

## <u>Plaintiff Freddie Kenebrew</u>

757.   Plaintiff Freddie Kenebrew, who was a Petty Officer 2nd Class (E-5), was located in the Sonar Control Room of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### <u>Count LXXXIII—Negligence (Plaintiff Freddie Kenebrew)</u>

*Respondeat Superior*

758.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

759. Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

760. NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

761. It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

762. Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

763. At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

764. At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

765. The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a. Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

766.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

767.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kenebrew has been diagnosed with PTSD, depression, and insomnia. Plaintiff Kenebrew has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Kenebrew's injuries are permanent and he will suffer from them into the future.

768.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kenebrew has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical

treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count LXXXIV—Negligent Infliction of Emotional Distress (Plaintiff Freddie Kenebrew)

769.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

770.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Kenebrew in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

771.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

772.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

773.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kenebrew has been diagnosed with PTSD, depression, and insomnia. Plaintiff Kenebrew has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Kenebrew's injuries are permanent and he will suffer from them into the future.

774.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kenebrew has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant

emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LXXXV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Freddie Kenebrew)

775.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

776.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

777.    NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

778.    NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

779.    NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

780.    Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not

competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

781.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

     a.  Failure to contact the Master prior to the collision;

     b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.  Failure to take the vessel out of autopilot until just prior to impact;

     e.  Failure to perform timely evasive maneuvering to avoid collision;

     f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

     g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

782.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

783. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

784. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

785. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count LXXXVI—Gross Negligence/Recklessness (Plaintiff Freddie Kenebrew)

786. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

787. The damages and injuries from which Plaintiff Kenebrew has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Kenebrew. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a. Failure to contact the Master prior to the collision;

   b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

788.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

789.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Kenebrew suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Freddie Kenebrew demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Count LXXXVII—Loss of Consortium (Plaintiff Ana Kenebrew)

790.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

791.    At the time of this incident, Freddie Kenebrew was married to Ana Kenebrew.

792.    As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Ana Kenebrew has suffered and will continue to suffer from a loss of

consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Freddie Kenebrew.

793.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Ana Kenebrew demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

## Plaintiff Derrick Kennerly

794.   Plaintiff Derrick Kennerly, who was a Seaman (E-3), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count LXXXVIII—Negligence (Plaintiff Derrick Kennerly)

### *Respondeat Superior*

795.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

796.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

797.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

798.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

799.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

800.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

801.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

802.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

803.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

804.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kennerly has been diagnosed with PTSD and other disorders. Plaintiff Kennerly has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff Kennerly's injuries are permanent and he will suffer from them into the future.

805.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kennerly has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count LXXXIX—Negligent Infliction of Emotional Distress (Plaintiff Derrick Kennerly)

806.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

807.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Kennerly in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

173

808.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

809.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

810.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kennerly has been diagnosed with PTSD and other disorders. Plaintiff Kennerly has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff Kennerly's injuries are permanent and he will suffer from them into the future.

811.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Kennerly has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count XC—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Derrick Kennerly)

812.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

174

813.     Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

814.     NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

815.     NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

816.     NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

817.     Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

818.     Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

819.  Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

820.  NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

821.  Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

822.  As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said

crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count XCI—Gross Negligence/Recklessness (Plaintiff Derrick Kennerly)

823.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

824.    The damages and injuries from which Plaintiff Kennerly has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Kennerly. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

825.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

826.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Kennerly suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Derrick Kennerly demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Plaintiff Obra King

827.   Plaintiff Obra King, who was a Petty Officer 2nd Class (E-5), was located in Auxiliary Room 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count XCII—Negligence (Plaintiff Obra King)

### *Respondeat Superior*

828.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

829.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

830.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

831.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

832.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

833.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

834.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

835.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

836.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

837.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff King has been diagnosed with PTSD and a traumatic brain injury, the symptoms of which include memory loss and severe headaches. Plaintiff King has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff King's injuries are permanent and he will suffer from them into the future.

838.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff King has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count XCIII—Negligent Infliction of Emotional Distress (Plaintiff Obra King)**

839.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

840.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff King in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

841.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

842.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

843.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff King has been diagnosed with PTSD and a traumatic brain injury, the symptoms of which include memory loss and severe headaches. Plaintiff King has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff King's injuries are permanent and he will suffer from them into the future.

844.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff King has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count XCIV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Obra King)

845.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

846.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

847.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

848.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

849.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

850.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

851.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

852.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

853.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

854.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

855.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said

crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count XCV—Gross Negligence/Recklessness (Plaintiff Obra King)

856.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

857.    The damages and injuries from which Plaintiff King has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff King. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

     a.  Failure to contact the Master prior to the collision;

     b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.  Failure to take the vessel out of autopilot until just prior to impact;

     e.  Failure to perform timely evasive maneuvering to avoid collision;

     f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

     g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

858.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

859.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff King suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Obra King demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Anthonie LaMay**

860.    Plaintiff Anthonie LaMay, who was a Chief Petty Officer (E-7), was located in Chief's Berthing 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count XCVI—Negligence (Plaintiff Anthonie LaMay)

*Respondeat Superior*

861.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

862.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

863.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

864.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

865.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

866.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

867.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

868.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

869.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

870.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff LaMay has been diagnosed with PTSD and sleep apnea. Plaintiff LaMay has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff LaMay's injuries are permanent and he will suffer from them into the future.

871.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff LaMay has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count XCVII—Negligent Infliction of Emotional Distress (Plaintiff Anthonie LaMay)**

872.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

873.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff LaMay in a zone of physical danger, which caused him to suffer serious injuries and exposed Plaintiff LaMay to the immediate risk of physical harm and death.

874.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal*

would collide with another vessel and cause serious emotional, mental, and psychological distress.

875.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

876.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff LaMay has been diagnosed with PTSD and sleep apnea. Plaintiff LaMay has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff LaMay's injuries are permanent and he will suffer from them into the future.

877.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff LaMay has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count XCVIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Anthonie LaMay)

878.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

879.    Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the

reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

880.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

881.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

882.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

883.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

884.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

     a.   Failure to contact the Master prior to the collision;

     b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

885.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

886.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

887.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

888.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count XCIX—Gross Negligence/Recklessness (Plaintiff Anthonie LaMay)

889.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

890.    The damages and injuries from which Plaintiff LaMay has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff LaMay. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

891.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

892.     As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff LaMay suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Anthonie LaMay demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count C—Loss of Consortium (Plaintiff Erin LaMay)

893.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

894.     At the time of this incident, Anthonie LaMay was married to Erin LaMay.

895.     As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Erin LaMay has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Anthonie LaMay.

896.     This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Erin LaMay demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Gaylord Lawrence**

897.    Plaintiff Gaylord Lawrence, who was a Seaman (E-3), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count CI—Negligence (Plaintiff Gaylord Lawrence)

*Respondeat Superior*

898.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

899.    Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

900.    NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

901.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

902.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

903.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

904.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

905.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

a.   Failure to contact the Master prior to the collision;

b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

906.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

907.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lawrence has been diagnosed with PTSD and other disorders as a direct result of the collision and its aftermath. Plaintiff Lawrence has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Lawrence's injuries are permanent and he will continue to suffer from them into the future.

908.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lawrence has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CII—Negligent Infliction of Emotional Distress (Plaintiff Gaylord Lawrence)**

909.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

910.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Lawrence in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

911.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

912.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

913.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lawrence has been diagnosed with PTSD and other disorders as a direct

result of the collision and its aftermath. Plaintiff Lawrence has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Lawrence's injuries are permanent and he will continue to suffer from them into the future.

914.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lawrence has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count CIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Gaylord Lawrence)

915.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

916.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

917.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

918. NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

919. NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

920. Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

921. Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a. Failure to contact the Master prior to the collision;

    b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d. Failure to take the vessel out of autopilot until just prior to impact;

    e. Failure to perform timely evasive maneuvering to avoid collision;

    f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

922.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

923.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

924.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

925.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count CIV—Gross Negligence/Recklessness (Plaintiff Gaylord Lawrence)**

926.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

927.    The damages and injuries from which Plaintiff Lawrence has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional

disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Lawrence. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

928.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

929.    As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Lawrence suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Gaylord Lawrence demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Tylor Locklear**

930.     Plaintiff Tylor Locklear, who was a Petty Officer 3rd Class (E-4), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count CV—Negligence (Plaintiff Tylor Locklear)

*Respondeat Superior*

931.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

932.     Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

933.     NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

934.     It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

935.     Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

936.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

937.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

938.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

939.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

940.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Locklear suffered significant physical injuries, including an injury to his lower back. In addition to his physical injuries, Plaintiff Locklear has been diagnosed with PTSD

as a direct result of the collision and its aftermath. Plaintiff Locklear has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Locklear's injuries are permanent and he will suffer from them into the future.

941.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Locklear has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CVI—Negligent Infliction of Emotional Distress (Plaintiff Tylor Locklear)

942.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

943.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Locklear in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

944.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

945.     As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

946.     As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Locklear suffered significant physical injuries, including an injury to his lower back. In addition to his physical injuries, Plaintiff Locklear has been diagnosed with PTSD as a direct result of the collision and its aftermath. Plaintiff Locklear has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Locklear's injuries are permanent and he will suffer from them into the future.

947.     As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Locklear has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CVII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Tylor Locklear)

948.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

949.     Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the

reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

950. NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

951. NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

952. NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

953. Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

954. Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a. Failure to contact the Master prior to the collision;

   b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

  c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

  d. Failure to take the vessel out of autopilot until just prior to impact;

  e. Failure to perform timely evasive maneuvering to avoid collision;

  f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

  g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

955. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

956. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

957. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

958. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count CVIII—Gross Negligence/Recklessness (Plaintiff Tylor Locklear)**

959.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

960.    The damages and injuries from which Plaintiff Locklear has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Locklear. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

961.    The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

962.     As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Locklear suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Tylor Locklear demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Wilfred Marquis**

963.     Plaintiff Wilfred Marquis, who was a Petty Officer 1st Class (E-6), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CIX—Negligence (Plaintiff Wilfred Marquis)

*Respondeat Superior*

964.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

965.     Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

966.     NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

967.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

968.    Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

969.    At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

970.    At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

971.    The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

972.    As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

973.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Marquis suffered significant physical injuries, including a traumatic brain injury, the symptoms of which include, but are not limited to, memory loss. In addition to his physical injuries, Plaintiff Marquis has been diagnosed with PTSD, major depressive disorder, and insomnia as a direct result of the collision and its aftermath. Plaintiff Marquis has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Marquis' injuries are permanent and he will suffer from them into the future.

974.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Marquis has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CX—Negligent Infliction of Emotional Distress (Plaintiff Wilfred Marquis)

975.    Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

976.    The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Marquis in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

977.    It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

978.    As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

979.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Marquis suffered significant physical injuries, including a traumatic brain injury, the symptoms of which include, but are not limited to, memory loss. In addition to his physical injuries, Plaintiff Marquis has been diagnosed with PTSD, major depressive disorder, and insomnia as a direct result of the collision and its aftermath. Plaintiff Marquis has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Marquis' injuries are permanent and he will suffer from them into the future.

980.    As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Marquis has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical

treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CXI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Wilfred Marquis)

981.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

982.     Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

983.     NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

984.     NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

985.     NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

986.     Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's

(and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

987.    Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

988.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

989.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

990.     Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

991.     As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CXII—Gross Negligence/Recklessness (Plaintiff Wilfred Marquis)

992.     Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

993.     The damages and injuries from which Plaintiff Marquis has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Marquis. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and \

213

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

994.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

995.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Marquis suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Wilfred Marquis demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Matthew Matczak**

996.   Plaintiff Matthew Matczak, who was a Petty Officer 1st Class (E-6), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

**Count CXIII—Negligence (Plaintiff Matthew Matczak)**

*Respondeat Superior*

997.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

998.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

999.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1000.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1001.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1002.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1003.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1004.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

215

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1005.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1006.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Matczak has been diagnosed with major depressive disorder and insomnia. Plaintiff Matczak has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Matczak's injuries are permanent and he will suffer from them into the future.

1007.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Matczak has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXIV—Negligent Infliction of Emotional Distress (Plaintiff Matthew Matczak)**

1008.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1009.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Matczak in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1010.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1011.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1012.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Matczak has been diagnosed with major depressive disorder and insomnia. Plaintiff Matczak has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Matczak's injuries are permanent and he will suffer from them into the future.

1013.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Matczak has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has

incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Matthew Matczak)**

1014.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1015.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1016.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1017.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1018.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1019.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's

(and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1020.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1021.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1022.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

219

1023.  Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1024.  As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CXVI—Gross Negligence/Recklessness (Plaintiff Matthew Matczak)

1025.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1026.  The damages and injuries from which Plaintiff Matczak has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Matczak. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1027.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1028.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Matczak suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Matthew Matczak demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff John Mead**

1029.   Plaintiff John Mead, who was a Petty Officer 3rd Class (E-4), was asleep in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

**Count CXVII—Negligence (Plaintiff John Mead)**

*Respondeat Superior*

1030.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1031.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1032.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1033.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1034.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1035.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1036.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1037.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1038.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1039.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Mead suffered physical injuries, including, but not limited to, injuries caused by the inhalation of seawater while attempting to escape Berthing Unit 2 after the collision. In addition to these physical injuries, Plaintiff Mead has been diagnosed with PTSD. Plaintiff Mead has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Mead's injuries are permanent and he will suffer from them into the future.

1040.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Matczak has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXVIII—Negligent Infliction of Emotional Distress (Plaintiff John Mead)**

1041.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1042.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Mead in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1043.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1044.  As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1045.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Mead suffered physical injuries, including, but not limited to, injuries caused by the inhalation of seawater while attempting to escape Berthing Unit 2 after the collision. In addition to these physical injuries, Plaintiff Mead has been diagnosed with PTSD. Plaintiff Mead has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Mead's injuries are permanent and he will suffer from them into the future.

1046.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Matczak has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will

continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

<u>Count CXIX—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff John Mead)</u>

1047.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1048.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1049.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1050.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1051.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1052.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The

225

lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1053. Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1054. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1055. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1056. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1057. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CXX—Gross Negligence/Recklessness (Plaintiff John Mead)

1058. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1059. The damages and injuries from which Plaintiff Mead has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Mead. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a. Failure to contact the Master prior to the collision;

    b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1060.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1061.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Mead suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff John Mead demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count CXXI—Loss of Consortium (Plaintiff Valeria Reinoso)

1062.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1063.   At the time of this incident, John Mead was married to Valeria Reinoso.

1064.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Valeria Reinoso has suffered and will continue to suffer from a loss of

consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff John Mead.

1065. This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Valeria Reinoso demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Antonio Morton**

1066. Plaintiff Antonio Morton, who was a Petty Officer 1st Class (E-6), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was struck by the *ACX Crystal*.

<div align="center">

**Count CXXII—Negligence (Plaintiff Antonio Morton)**

*Respondeat Superior*

</div>

1067. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1068. Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1069. NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1070.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1071.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1072.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1073.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1074.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

230

1075. As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1076. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Morton suffered physical injuries, including, but not limited to, a back injury and headaches. In addition to these physical injuries, Plaintiff Morton has been diagnosed with PTSD as a direct result of the collision and its aftermath. Plaintiff Morton has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Morton's injuries are permanent and he will suffer from them into the future.

1077. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Morton has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXXIII—Negligent Infliction of Emotional Distress (Plaintiff Antonio Morton)**

1078. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1079. The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Morton in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

232 of 346

1080.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1081.  As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1082.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Morton suffered physical injuries, including, but not limited to, a back injury and headaches. In addition to these physical injuries, Plaintiff Morton has been diagnosed with PTSD as a direct result of the collision and its aftermath. Plaintiff Morton has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Morton's injuries are permanent and he will suffer from them into the future.

1083.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Morton has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXXIV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Antonio Morton)**

1084.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1085.  Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1086.  NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1087.  NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1088.  NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1089.  Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1090.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1091.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1092.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1093.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX*

*Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1094.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CXXV—Gross Negligence/Recklessness (Plaintiff Antonio Morton)

1095.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1096.   The damages and injuries from which Plaintiff Morton has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Morton. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1097.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1098.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Morton suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Antonio Morton demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count CXXVI—Loss of Consortium (Plaintiff Antoinette Morton)

1099.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1100.   At the time of this incident, Antonio Morton was married to Antoinette Morton.

1101.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Antoinette Morton has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Antonio Morton.

1102.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Antoinette Morton demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Christian Nash**

1103.   Plaintiff Christian Nash, who was a Petty Officer 2nd Class (E-5), was on the Mess Deck of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

<div align="center">

**Count CXXVII—Negligence (Plaintiff Christian Nash)**

*Respondeat Superior*

</div>

1104.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1105.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1106.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1107.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1108.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

<div align="center">237</div>

1109.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1110.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1111.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1112.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1113.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Nash suffers from a reaction to severe stress and insomnia. Plaintiff Nash has

had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Nash's injuries are permanent and he will suffer from them into the future.

1114.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Nash has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXXVIII—Negligent Infliction of Emotional Distress (Plaintiff Christian Nash)**

1115.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1116.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Nash in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1117.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1118.  As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1119.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Nash suffers from a reaction to severe stress and insomnia. Plaintiff Nash has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Nash's injuries are permanent and he will suffer from them into the future.

1120.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Nash has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CXXIX—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Christian Nash)

1121.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1122.  Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1123.  NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to

any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1124.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1125.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1126.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1127.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

241

g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1128. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1129. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1130. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1131. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CXXX—Gross Negligence/Recklessness (Plaintiff Christian Nash)

1132. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1133. The damages and injuries from which Plaintiff Nash has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct.

The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Nash. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1134.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1135.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Nash suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Christian Nash demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Christopher Rivera**

1136.   Plaintiff Christopher Rivera, who was a Petty Officer 2nd Class (E-5), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CXXXI—Negligence (Plaintiff Christopher Rivera)

*Respondeat Superior*

1137.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1138.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1139.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1140.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1141.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1142.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1143.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1144.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1145.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1146.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Rivera has been diagnosed with severe PTSD and suffers from memory loss.

Plaintiff Rivera has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Rivera's injuries are permanent and he will suffer from them into the future.

1147.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Rivera has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXXXII—Negligent Infliction of Emotional Distress (Plaintiff Christopher Rivera)**

1148.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1149.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Rivera in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1150.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1151.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1152.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Rivera has been diagnosed with severe PTSD and suffers from memory loss. Plaintiff Rivera has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Rivera's injuries are permanent and he will suffer from them into the future.

1153.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Rivera has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count CXXXIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Christopher Rivera)

1154.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1155.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1156.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to

any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1157.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1158.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1159.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1160.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

     a.  Failure to contact the Master prior to the collision;

     b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.  Failure to take the vessel out of autopilot until just prior to impact;

     e.  Failure to perform timely evasive maneuvering to avoid collision;

     f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1161.  Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1162.  NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1163.  Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1164.  As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CXXXIV—Gross Negligence/Recklessness (Plaintiff Christopher Rivera)

1165.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1166.  The damages and injuries from which Plaintiff Rivera has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct.

The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Rivera. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

     a. Failure to contact the Master prior to the collision;

     b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d. Failure to take the vessel out of autopilot until just prior to impact;

     e. Failure to perform timely evasive maneuvering to avoid collision;

     f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

     g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1167. The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1168. As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Rivera suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Christopher Rivera demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count CXXXV—Loss of Consortium (Plaintiff Tuyuan Rivera)

1169.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1170.   At the time of this incident, Christopher Rivera was married to Tuyuan Rivera.

1171.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Tuyuan Rivera has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Christopher Rivera.

1172.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

1173.   WHEREFORE, Plaintiff Tuyuan Rivera demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper

### Plaintiff Jackson Schrimsher

1174.   Plaintiff Jackson Schrimsher, who was a Petty Officer 2nd Class (E-5), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CXXXVI—Negligence (Plaintiff Jackson Schrimsher)

*Respondeat Superior*

1175.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

251

1176.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1177.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1178.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1179.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1180.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1181.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1182.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

     a.   Failure to contact the Master prior to the collision;

  b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

  c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

  d. Failure to take the vessel out of autopilot until just prior to impact;

  e. Failure to perform timely evasive maneuvering to avoid collision;

  f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

  g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1183. As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1184. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Schrimsher has been diagnosed with severe PTSD. Plaintiff Schrimsher has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Schrimsher's injuries are permanent and he will suffer from them into the future.

1185. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Schrimsher has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXXXVII—Negligent Infliction of Emotional Distress (Plaintiff Jackson Schrimsher)**

1186.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1187.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Schrimsher in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1188.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1189.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1190.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Schrimsher has been diagnosed with severe PTSD. Plaintiff Schrimsher has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Schrimsher's injuries are permanent and he will suffer from them into the future.

1191.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Schrimsher has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical

treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CXXXVIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Jackson Schrimsher)

1192.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1193.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1194.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1195.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1196.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1197.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's

(and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1198.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1199.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1200.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1201.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1202.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

## Count CXXXIX—Gross Negligence/Recklessness (Plaintiff Jackson Schrimsher)

1203.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1204.   The damages and injuries from which Plaintiff Schrimsher has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Schrimsher. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    h.   Failure to contact the Master prior to the collision;

    i.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    j.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    k.   Failure to take the vessel out of autopilot until just prior to impact;

    l.   Failure to perform timely evasive maneuvering to avoid collision;

    m.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

n. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1205. The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1206. As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Schrimsher suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Jackson Schrimsher demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count CXL—Loss of Consortium (Plaintiff Sydnee Legrande)

1207. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1208. At the time of this incident, Jackson Schrimsher was married to Sydnee Legrande.

1209. As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Sydnee Legrande has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Jackson Schrimsher.

1210.  This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Sydnee Legrande demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Michael Sheppard**

1211.   Plaintiff Michael Sheppard, who was a Petty Officer 3rd Class (E-4), was located in an aft Interior Communications Space of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CXLI—Negligence (Plaintiff Michael Sheppard)

*Respondeat Superior*

1212.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1213.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1214.  NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1215.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1216.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1217.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1218.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1219.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1220.  As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1221.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Sheppard suffered significant physical injuries, including, but not limited to, a back injury from pulling a heavy anchor after the collision. In addition to his physical injuries, Plaintiff Sheppard has been diagnosed with PTSD and major depressive disorder as a direct result of the collision and its aftermath. Plaintiff Sheppard has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Sheppard's injuries are permanent and he will suffer from them into the future.

1222.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Sheppard has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXLII—Negligent Infliction of Emotional Distress (Plaintiff Michael Sheppard)**

1223.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1224.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Sheppard in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1225.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1226.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1227.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Sheppard suffered significant physical injuries, including, but not limited to, a back injury from pulling a heavy anchor after the collision. In addition to his physical injuries, Plaintiff Sheppard has been diagnosed with PTSD and major depressive disorder as a direct result of the collision and its aftermath. Plaintiff Sheppard has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Sheppard's injuries are permanent and he will suffer from them into the future.

1228.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Sheppard has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical

treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CXLIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Michael Sheppard)

1229.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1230.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1231.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1232.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1233.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1234.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's

(and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1235.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

     a.   Failure to contact the Master prior to the collision;

     b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.   Failure to take the vessel out of autopilot until just prior to impact;

     e.   Failure to perform timely evasive maneuvering to avoid collision;

     f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

     g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1236.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1237.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1238.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1239.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count CXLIV—Gross Negligence/Recklessness (Plaintiff Michael Sheppard)**

1240.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1241.   The damages and injuries from which Plaintiff Sheppard has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Sheppard. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1242.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1243.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Sheppard suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Michael Sheppard demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Joshua Tapia**

1244.   Plaintiff Joshua Tapia, who was a Petty Officer 2nd Class (E-5), was asleep in his rack in Berthing Unit 2 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

**Count CXLV—Negligence (Plaintiff Joshua Tapia)**

*Respondeat Superior*

1245.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1246.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1247.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1248.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1249.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1250.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1251.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1252.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1253.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1254.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Tapia has been diagnosed with PTSD, major depressive disorder, and tinnitus. Plaintiff Tapia has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Tapia's injuries are permanent and he will suffer from them into the future.

1255.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Tapia has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CXLVI—Negligent Infliction of Emotional Distress (Plaintiff Joshua Tapia)**

1256.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1257.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Tapia in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1258.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1259.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1260.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Tapia has been diagnosed with PTSD, major depressive disorder, and tinnitus. Plaintiff Tapia has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Tapia's injuries are permanent and he will suffer from them into the future.

1261.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Tapia has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has

incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CXLVII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Joshua Tapia)

1262.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1263.  Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1264.  NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1265.  NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1266.  NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1267.  Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's

(and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1268.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1269.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1270.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1271.  Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1272.  As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CXLVIII—Gross Negligence/Recklessness (Plaintiff Joshua Tapia)

1273.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1274.  The damages and injuries from which Plaintiff Tapia has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Tapia. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1275. The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1276. As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Tapia suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Joshua Tapia demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Daniel Taylor**

1277. Plaintiff Daniel Taylor, who was a Petty Officer 2nd Class (E-5), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count CXLIX—Negligence (Plaintiff Daniel Taylor)

*Respondeat Superior*

1278. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1279. Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1280.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1281.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1282.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1283.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1284.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1285.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.   Failure to take the vessel out of autopilot until just prior to impact;

e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1286.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1287.   As a direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Taylor has been diagnosed with PTSD and major depressive disorder. Plaintiff Taylor has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Taylor's injuries are permanent and he will suffer from them into the future.

1288.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Taylor has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CL—Negligent Infliction of Emotional Distress (Plaintiff Daniel Taylor)**

1289.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1290.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Taylor in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1291.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1292.  As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1293.  As a direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Taylor has been diagnosed with PTSD and major depressive disorder. Plaintiff Taylor has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Taylor's injuries are permanent and he will suffer from them into the future.

1294.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Taylor has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CLI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Daniel Taylor)**

1295.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1296.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1297.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1298.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1299.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1300.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1301.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1302.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1303.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1304.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX*

*Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1305.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CLII—Gross Negligence/Recklessness (Plaintiff Daniel Taylor)

1306.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1307.   The damages and injuries from which Plaintiff Taylor has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Taylor. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1308.  The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1309.  As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Taylor suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Daniel Taylor demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Plaintiff Michael Watson

1310.  Plaintiff Michael Watson, who was a Petty Officer 3rd Class (E-4), was located in the Sonar Control Room of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CLIII—Negligence (Plaintiff Michael Watson)

*Respondeat Superior*

1311.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1312.  Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1313. NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of

the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1314.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1315.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1316.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1317.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1318.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

     a.   Failure to contact the Master prior to the collision;

     b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.   Failure to take the vessel out of autopilot until just prior to impact;

     e.   Failure to perform timely evasive maneuvering to avoid collision;

f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1319.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1320.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Watson has been diagnosed with PTSD. Plaintiff Watson has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Watson's injuries are permanent and he will suffer from them into the future.

1321.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Watson has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CLIV—Negligent Infliction of Emotional Distress (Plaintiff Michael Watson)**

1322.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1323.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Watson in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1324.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1325.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1326.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Watson has been diagnosed with PTSD. Plaintiff Watson has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Watson's injuries are permanent and he will suffer from them into the future.

1327.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Watson has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count CLV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Michael Watson)

1328.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1329.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1330.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1331.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1332.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1333.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1334.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1335.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1336.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1337.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX*

*Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1338.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CLVI—Gross Negligence/Recklessness (Plaintiff Michael Watson)

1339.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1340.   The damages and injuries from which Plaintiff Watson has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Watson. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

    b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.  Failure to take the vessel out of autopilot until just prior to impact;

    e.  Failure to perform timely evasive maneuvering to avoid collision;

    f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1341.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1342.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Watson suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Michael Watson demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count CLVII—Loss of Consortium (Plaintiff Megan Fitzpatrick)

1343.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1344.   At the time of this incident, Michael Watson was married to Megan Fitzpatrick.

1345.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Megan Fitzpatrick has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the physical, psychological, and emotional injuries that the defendant caused to Plaintiff Michael Watson.

1346.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Megan Fitzpatrick demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

## Plaintiff Samuel Williams

1347.   Plaintiff Samuel Williams, who was a Petty Officer 1st Class (E-6), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CLVIII—Negligence (Plaintiff Samuel Williams)

*Respondeat Superior*

1348.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1349.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1350.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1351.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1352.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1353.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1354.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1355.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1356.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1357.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Samuel Williams has been diagnosed with PTSD and suffers from anxiety and depression. Plaintiff Samuel Williams has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Samuel Williams' injuries are permanent and he will suffer from them into the future.

1358.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Samuel Williams has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CLIX—Negligent Infliction of Emotional Distress (Plaintiff Samuel Williams)**

1359.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1360.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Samuel Williams in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1361.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1362.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1363.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Samuel Williams has been diagnosed with PTSD and suffers from anxiety and depression. Plaintiff Samuel Williams has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Samuel Williams' injuries are permanent and he will suffer from them into the future.

1364.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Samuel Williams has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CLX—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Samuel Williams)

1365.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1366.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the

reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1367.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1368.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1369.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1370.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1371.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1372.    Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1373.    NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1374.    Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1375.    As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

## Count CLXI—Gross Negligence/Recklessness (Plaintiff Samuel Williams)

1376.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1377.   The damages and injuries from which Plaintiff Samuel Williams has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Samuel Williams. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1378.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1379.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Samuel Williams suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Samuel Williams demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff TyQuail Williams**

1380.   Plaintiff TyQuail Williams, who was a Petty Officer 2nd Class (E-5), was located in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count CLXII—Negligence (Plaintiff TyQuail Williams)

*Respondeat Superior*

1381.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1382.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1383.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1384.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1385.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1386.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1387.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1388.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1389.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1390.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff TyQuail Williams suffered significant physical injuries, including, but not limited to, injuries to his back, wrist, and head, the latter of which caused a traumatic brain injury. In addition to his physical injuries, Plaintiff TyQuail Williams has been diagnosed with PTSD, major depressive disorder, and other disorders. Plaintiff TyQuail Williams has attempted suicide more than once since the collision. Plaintiff TyQuail Williams has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff TyQuail Williams' injuries are permanent and he will suffer from them into the future.

1391.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff TyQuail Williams has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CLXIII—Negligent Infliction of Emotional Distress (Plaintiff TyQuail Williams)**

1392.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1393.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff TyQuail Williams in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1394.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1395.  As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1396.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff TyQuail Williams suffered significant physical injuries, including, but not limited to, injuries to his back, wrist, and head, the latter of which caused a traumatic brain injury. In addition to his physical injuries, Plaintiff TyQuail Williams has been diagnosed with PTSD, major depressive disorder, and other disorders. Plaintiff TyQuail Williams has attempted suicide more than once since the collision. Plaintiff TyQuail Williams has had and will continue to receive extensive medical and psychological treatment for his injuries. Plaintiff TyQuail Williams' injuries are permanent and he will suffer from them into the future.

1397.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff TyQuail Williams has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has

incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CLXIV—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff TyQuail Williams)

1398.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1399.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1400.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1401.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1402.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1403.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's

(and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1404.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1405.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1406.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1407.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1408.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CLXV—Gross Negligence/Recklessness (Plaintiff TyQuail Williams)

1409.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1410.   The damages and injuries from which Plaintiff TyQuail Williams has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff TyQuail Williams. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1411.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1412.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff TyQuail Williams suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff TyQuail Williams demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Timothy Winters**

1413.   Plaintiff Timothy Winters, who was a Lieutenant (O-3), was located in a Stateroom of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CLXVI—Negligence (Plaintiff Timothy Winters)

*Respondeat Superior*

1414.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1415.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1416.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1417.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1418.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1419.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1420.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1421.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1422.  As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1423.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Winters suffered significant physical and emotional injuries, some or all of which are permanent.

1424.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Winters has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress. Additionally, he has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CLXVII—Negligent Infliction of Emotional Distress (Plaintiff Timothy Winters)

1425.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1426.   The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Winters in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1427.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1428.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1429.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Winters suffered significant physical and emotional injuries, some or all of which are permanent.

1430.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Winters has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress. Additionally, he has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CLXVIII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Timothy Winters)

1431.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1432.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1433.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1434.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1435.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1436.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1437.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

a.  Failure to contact the Master prior to the collision;

b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

d.  Failure to take the vessel out of autopilot until just prior to impact;

e.  Failure to perform timely evasive maneuvering to avoid collision;

f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1438. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1439. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1440. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1441. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said

crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count CLXIX—Gross Negligence/Recklessness (Plaintiff Timothy Winters)**

1442.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1443.   The damages and injuries from which Plaintiff Winters has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Winters. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1444.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

308

1445.  As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Winters suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Timothy Winters demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

## Plaintiff Rashad Wood

1446.  Plaintiff Rashad Woods, who was a Seaman (E-3), was asleep in his rack in Berthing Unit 1 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count CLXX—Negligence (Plaintiff Rashad Woods)

### *Respondeat Superior*

1447.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1448.  Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1449.  NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1450.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1451.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1452.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1453.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1454.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1455.  As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1456.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Woods has been diagnosed with PTSD. Plaintiff Woods has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Woods' injuries are permanent and he will suffer from them into the future.

1457.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Woods has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CLXXI—Negligent Infliction of Emotional Distress (Plaintiff Rashad Woods)**

1458.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1459.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Woods in a zone of physical danger, which caused him to suffer serious injuries and exposed him to the immediate risk of physical harm and death.

1460.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal*

would collide with another vessel and cause serious emotional, mental, and psychological distress.

1461. As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1462. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Woods has been diagnosed with PTSD. Plaintiff Woods has had and will continue to receive medical and psychological treatment for his injuries. Plaintiff Woods' injuries are permanent and he will suffer from them into the future.

1463. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Woods has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CLXXII—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Rashad Woods)

1464. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1465. Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the

reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1466.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1467.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1468.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1469.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1470.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

      a.   Failure to contact the Master prior to the collision;

      b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1471.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1472.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1473.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1474.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count CLXXIII—Gross Negligence/Recklessness (Plaintiff Rashad Woods)**

1475.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1476.  The damages and injuries from which Plaintiff Woods has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Woods. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.  Failure to contact the Master prior to the collision;

   b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.  Failure to take the vessel out of autopilot until just prior to impact;

   e.  Failure to perform timely evasive maneuvering to avoid collision;

   f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1477.  The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1478.  As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Woods suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Rashad Woods demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Jacqueline Langlais Wrage**

1479.  Plaintiff Jacqueline Langlais Wrage, who was a Petty Officer 2nd Class (E-5), was asleep in her rack in Berthing Unit 4 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

<div align="center">

**Count CLXXIV—Negligence (Plaintiff Jacqueline Langlais Wrage)**

*Respondeat Superior*

</div>

1480.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1481.  Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1482.  NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1483.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1484.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1485.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1486.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1487.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1488.  As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1489.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Wrage has been diagnosed with PTSD and persistent depressive disorder. Plaintiff Wrage has had and will continue to receive medical and psychological treatment for her injuries. Plaintiff Wrage's injuries are permanent and she will suffer from them into the future.

1490.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Wrage has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CLXXV—Negligent Infliction of Emotional Distress (Plaintiff Jacqueline Langlais Wrage)

1491.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1492.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Wrage in a zone of physical danger, which caused her to suffer serious injuries and exposed her to the immediate risk of physical harm and death.

1493.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal*

would collide with another vessel and cause serious emotional, mental, and psychological distress.

1494.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's  negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1495.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Wrage has been diagnosed with PTSD and persistent depressive disorder. Plaintiff Wrage has had and will continue to receive medical and psychological treatment for her injuries. Plaintiff Wrage's injuries are permanent and she will suffer from them into the future.

1496.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Wrage has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, she has suffered and will continue to suffer from severe disruption to her personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

### Count CLXXVI—Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Jacqueline Langlais Wrage)

1497.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1498.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the

reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1499. NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1500. NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1501. NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1502. Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1503. Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a. Failure to contact the Master prior to the collision;

    b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

  c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

  d. Failure to take the vessel out of autopilot until just prior to impact;

  e. Failure to perform timely evasive maneuvering to avoid collision;

  f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

  g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1504. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1505. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1506. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1507. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count CLXXVII—Gross Negligence/Recklessness (Plaintiff Jacqueline Langlais Wrage)**

1508.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1509.   The damages and injuries from which Plaintiff Wrage has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Wrage. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1510.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1511.  As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Wrage suffered from all injuries herein mentioned, including, but not limited to, severe physical and mental pain and pecuniary losses.

WHEREFORE, Plaintiff Jacqueline Langlais Wrage demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Daniel Lee**

1512.  Plaintiff Daniel Lee, who was a Chief Petty Officer (E-7), was located in Berthing Unit 3 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count CLXXVIII—Negligence (Plaintiff Daniel Lee)

### *Respondeat Superior*

1513.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1514.  Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1515.  NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1516.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1517.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1518.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1519.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1520.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1521.  As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1522.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lee has suffered injuries and has been diagnosed with adjustment disorder. Plaintiff Lee has had and will continue to receive medical treatment for his injuries. Plaintiff Lee's injuries are permanent and he will suffer from them into the future.

1523.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lee has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CLXXIX —Negligent Infliction of Emotional Distress (Plaintiff Daniel Lee)**

1524.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1525.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Lee in a zone of physical danger, which caused him to suffer serious injuries, and exposed him to the immediate risk of physical harm and death.

1526.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal*

would collide with another vessel and cause serious emotional, mental, and psychological distress.

1527.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1528.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lee suffered injuries from the collision and has been diagnosed with adjustment disorder. Plaintiff Lee has had and will continue to receive medical treatment for his injuries. Plaintiff Lee's injuries are permanent and he will suffer from them into the future.

1529.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Lee has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count CLXXX —Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Daniel Lee)

1530.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1531.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the

reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1532.   NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1533.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1534.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1535.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1536.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

  a.   Failure to contact the Master prior to the collision;

  b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

      c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

      d.   Failure to take the vessel out of autopilot until just prior to impact;

      e.   Failure to perform timely evasive maneuvering to avoid collision;

      f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

      g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1537. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1538. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1539. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1540. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

**Count CLXXXI —Gross Negligence/Recklessness (Plaintiff Daniel Lee)**

1541.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1542.   The damages and injuries from which Plaintiff Lee has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Lee. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1543.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1544.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Lee suffered from all injuries herein mentioned, including, but not limited to, severe mental pain and pecuniary losses.

WHEREFORE, Plaintiff Daniel Lee demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

**Plaintiff Joshua Mason**

1545.   Plaintiff Joshua Mason, who was a Petty Officer 2nd Class (E-5), was located in Berthing Unit 3 of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

## Count CLXXXII —Negligence (Plaintiff Joshua Mason)

### *Respondeat Superior*

1546.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1547.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1548.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1549. It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1550. Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1551. At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1552. At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1553. The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a. Failure to contact the Master prior to the collision;

    b. Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c. Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d. Failure to take the vessel out of autopilot until just prior to impact;

    e. Failure to perform timely evasive maneuvering to avoid collision;

    f. Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1554.  As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1555.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Mason has suffered injuries and has been diagnosed with anxiety and adjustment disorder. Plaintiff Mason has had and will continue to receive medical treatment for his injuries. Plaintiff Mason's injuries are permanent and he will suffer from them into the future.

1556.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Mason has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count CLXXXIII —Negligent Infliction of Emotional Distress (Plaintiff Joshua Mason)

1557.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1558.  The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Mason in a zone of physical danger, which caused him to suffer serious injuries, and exposed him to the immediate risk of physical harm and death.

1559.  It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal*

would collide with another vessel and cause serious emotional, mental, and psychological distress.

1560.   As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1561.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Mason suffered injuries from the collision and has been diagnosed with anxiety and adjustment disorder. Plaintiff Mason has had and will continue to receive medical treatment for his injuries. Plaintiff Mason's injuries are permanent and he will suffer from them into the future.

1562.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Mason has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

**Count CLXXXIV —Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Joshua Mason)**

1563.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1564.   Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to

333

exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1565. NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1566. NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1567. NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1568. Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1569. Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

    a.  Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1570.   Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1571.   NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1572.   Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1573.   As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said

crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

### Count CLXXXV —Gross Negligence/Recklessness (Plaintiff Joshua Mason)

1574.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1575.   The damages and injuries from which Plaintiff Mason has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct. The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Mason. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

   a.   Failure to contact the Master prior to the collision;

   b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

   c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

   d.   Failure to take the vessel out of autopilot until just prior to impact;

   e.   Failure to perform timely evasive maneuvering to avoid collision;

   f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

   g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1576.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1577.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Mason suffered from all injuries herein mentioned, including, but not limited to, severe mental pain and pecuniary losses.

WHEREFORE, Plaintiff Joshua Mason demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

### Count CLXXXVI—Loss of Consortium (Plaintiff Rel Mason)

1578.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1579.   At the time of this incident, Joshua Mason was married to Rel Mason.

1580.   As a direct and proximate result of the negligence alleged against NYK Line in the preceding counts, Rel Mason has suffered and will continue to suffer from a loss of consortium with her spouse as a result of the psychological and emotional injuries that the defendant caused to Plaintiff Joshua Mason.

1581.   This loss of consortium claim includes, but is not limited to, a loss of companionship, support, services, society, love, affection, aid, cooperation, marital relations, intimacy, and comfort.

WHEREFORE, Plaintiff Rel Mason demands judgment against the defendant in the full and just amount of One Million Dollars ($1,000,000.00) plus interest, costs, and any other relief the court deems just and proper.

**Plaintiff Jared Ogilvie**

1582.   Plaintiff Jared Ogilvie, who was a Chief Petty Officer (E-7), was located in Forward Chief's Berthing Unit of the *USS Fitzgerald* at the time it was violently struck by the *ACX Crystal*.

### Count CLXXXVII—Negligence (Plaintiff Jared Ogilvie)

*Respondeat Superior*

1583.   Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1584.   Upon information and belief, NYK Line was involved in and responsible for the navigation of the *ACX Crystal*, including, but not limited to, the selection of routes.

1585.   NYK Line had a duty of care to ensure that the *ACX Crystal*'s crew would navigate the vessel reasonably under the circumstances and conform to the International Rules of the Road in order to protect others against unreasonable risks. The law imposes on NYK Line and the *ACX Crystal*'s crew a duty of reasonable care because its conduct may present serious risks to others aboard ships on the navigable waters.

1586.   It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause injuries and deaths.

1587.   Accordingly, NYK Line owed a duty of care to Plaintiffs to not expose them to unreasonable risks by navigating the *ACX Crystal* reasonably and in conformity with the International Rules of the Road and its own Standing Orders.

1588.   At all relevant times herein, NYK Line, as the charterer and employer of the *ACX Crystal* at the time of the collision, is vicariously liable for the negligence of the crew of the *ACX Crystal*.

1589.   At all relevant times herein, the *ACX Crystal*'s crew was acting within the course and scope of their employment while navigating the *ACX Crystal*, including during the time of the collision with the *USS Fitzgerald*.

1590.   The negligence of NYK Line, through the negligent acts and omission of the *ACX Crystal*'s crew, includes, but is not limited to, the following:

    a.   Failure to contact the Master prior to the collision;

    b.   Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

    c.   Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

    d.   Failure to take the vessel out of autopilot until just prior to impact;

    e.   Failure to perform timely evasive maneuvering to avoid collision;

    f.   Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

    g.   Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1591.   As a direct and proximate result of NYK Line's negligent acts and omissions described above, the *ACX Crystal* struck the *USS Fitzgerald*, causing the collision and the significant injuries and damages described herein.

1592.   As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Ogilvie has suffered injuries and has been diagnosed with PTSD. Plaintiff

Ogilvie has had and will continue to receive medical treatment for his injuries. Plaintiff Ogilvie's injuries are permanent and he will suffer from them into the future.

1593. As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Ogilvie has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count CLXXXVIII —Negligent Infliction of Emotional Distress (Plaintiff Jared Ogilvie)

1594. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1595. The *ACX Crystal*'s collision with the *USS Fitzgerald* put Plaintiff Ogilvie in a zone of physical danger, which caused him to suffer serious injuries, and exposed him to the immediate risk of physical harm and death.

1596. It is foreseeable that by failing to act reasonably and in conformity with the International Rules of the Road and its own Standing Orders, a vessel such as the *ACX Crystal* would collide with another vessel and cause serious emotional, mental, and psychological distress.

1597. As a direct and proximate result of NYK Line's negligent acts and omissions, the *ACX Crystal* struck the *USS Fitzgerald*. Accordingly, NYK Line's negligent acts and omissions played a substantial part in bringing about the collision and all the injuries herein alleged.

1598.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Ogilvie suffered injuries from the collision and has been diagnosed with PTSD. Plaintiff Ogilvie has had and will continue to receive medical treatment for his injuries. Plaintiff Ogilvie's injuries are permanent and he will suffer from them into the future.

1599.  As a further direct and proximate result of NYK Line's negligent acts and omissions, Plaintiff Ogilvie has suffered and will continue to suffer from extreme conscious physical, mental, and emotional pain and suffering, including, but not limited to, significant emotional distress associated with the fear of dying. Additionally, he has suffered and will continue to suffer from severe disruption to his personal and/or marital relationships, has incurred and will continue to incur substantial expenses and inconvenience for medical treatment, and has suffered and will continue to suffer from pecuniary losses such as loss of income and wages and wage earning capacity, among other damages.

## Count CLXXXIX —Negligent Entrustment of a Vessel and Negligent Hiring, Training, and Supervision (Plaintiff Jared Ogilvie)

1600.  Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1601.  Upon information and belief, NYK Line, as the employer of the *ACX Crystal*'s crew, had a contractual duty and a duty under general maritime and federal common law to exercise reasonable care to hire, employ, train, and supervise its employees regarding the reasonable, careful, and prudent operation of the *ACX Crystal* so as to prevent them from causing harm to others.

1602.  NYK Line, as the owner and/or operator of the *ACX Crystal*, had a duty under general maritime and federal common law to exercise reasonable care not to entrust its vessels to

any person whose experience and training is such that so entrusting would involve exposing others to unreasonable risks and harm.

1603.   NYK Line, as the employer of the *ACX Crystal*'s crew, was responsible for its hiring, training, and supervision.

1604.   NYK Line entrusted the *ACX Crystal* to the crew, including to the *ACX Crystal*'s Second Mate.

1605.   Upon information and belief, the *ACX Crystal*'s Second Mate and all other crew members responsible for operating the *ACX Crystal* at the time of the collision were not competent to do so due to their inadequate experience, training, and/or lack of supervision. The lack of adequate experience, training, and/or supervision that is evidenced by the Second Mate's (and others) own grossly negligent and reckless conduct in the operation of the ACX Crystal exposed others to an unreasonable risk of harm and injury.

1606.   Specifically, the lack of adequate experience, training, and/or supervision of the crew responsible for operating the *ACX Crystal* at the time of the collision is evidenced by the numerous instances of its negligent and reckless conduct, including, but not limited to, the following:

     a.  Failure to contact the Master prior to the collision;

     b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.  Failure to take the vessel out of autopilot until just prior to impact;

     e.  Failure to perform timely evasive maneuvering to avoid collision;

     f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

g. Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1607. Given these facts, it was highly foreseeable that the *ACX Crystal*'s crew generally, and its Second Mate specifically, would operate the *ACX Crystal* in such a way as to cause a collision with another vessel. Adequately experienced, trained, and supervised crew would not have committed the above negligent and reckless acts or omissions or violated the International Rules of the Road and the *ACX Crystal*'s own Standing Orders.

1608. NYK Line knew or should have known that the *ACX Crystal*'s crew were inadequately experienced, trained, or supervised and that employing them and entrusting the *ACX Crystal* to them would likely involve an unreasonable risk of danger and injury to others.

1609. Accordingly, NYK Line failed to exercise reasonable care when hiring and entrusting an inadequately experienced, trained, and/or supervised crew to operate the *ACX Crystal*. NYK Line also breached its own duty to train and supervise the crew of the *ACX Crystal*.

1610. As a direct and proximate result of NYK Line's negligence in entrusting the vessel to the crew of the *ACX Crystal*, as well as its negligence in training and supervising said crew and its Second Mate, the *ACX Crystal* collided with the *USS Fitzgerald*, causing all of the injuries and damages sustained by the Plaintiff.

## Count CLXL—Gross Negligence/Recklessness (Plaintiff Jared Ogilvie)

1611. Plaintiffs hereby incorporate by reference all paragraphs in the Complaint as though fully alleged herein and further allege as follows:

1612. The damages and injuries from which Plaintiff Ogilvie has suffered and will continue to suffer are the direct and proximate result of NYK Line's grossly negligent conduct.

The conduct was so reckless and wanton in nature as to rise to the level of an intentional disregard for the welfare and safety of those on board the *USS Fitzgerald*, including Plaintiff Ogilvie. NYK Line's grossly negligent conduct includes, but is not limited to, the following:

     a.  Failure to contact the Master prior to the collision;

     b.  Failure to sound any short blasts whatsoever, let alone the five such blasts required by the International Rules of the Road;

     c.  Failure to attempt to hail the *USS Fitzgerald* via bridge-to-bridge radio;

     d.  Failure to take the vessel out of autopilot until just prior to impact;

     e.  Failure to perform timely evasive maneuvering to avoid collision;

     f.  Failure to otherwise warn the *USS Fitzgerald* of the impending collision; and

     g.  Failure to otherwise follow the International Rules of the Road and its own Standing Orders.

1613.   The persistent failure to conform to the International Rules of the Road and its own Standing Orders with the knowledge that failing to do so would result in a direct collision with a smaller vessel constitutes a blatant disregard for the well-being of those on board the *USS Fitzgerald*.

1614.   As a direct and proximate result of NYK Line's grossly negligent and reckless conduct, Plaintiff Ogilvie suffered from all injuries herein mentioned, including, but not limited to, severe mental pain and pecuniary losses.

WHEREFORE, Plaintiff Jared Ogilvie demands judgment against the defendant on all counts, including compensatory damages in the full and just amount of Five Million Dollars ($5,000,000.00) plus interest and costs, punitive damages, and any other relief the court deems just and proper.

<u>**JURY DEMAND**</u>

Plaintiffs request a jury trial regarding liability and damages for all counts of this Complaint.

Respectfully submitted,

By:  */s/ Craig Isenberg*
     Craig Isenberg, T.A., 29603
     Laurence D LeSueur, Jr., 35206
     BARRASSO USDIN KUPPERMAN
        FREEMAN & SARVER, L.L.C.
     909 Poydras Street, Suite 2350
     New Orleans, Louisiana  70112
     Telephone:  (504) 589-9700
     Facsimile:  (504) 589-9701
     cisenberg@barrassousdin.com
     llesueur@barrassousdin.com

     */s/ David Schloss*
     David M. Schloss, 416523
     Kasey K. Murray, 1016186
     KOONZ MCKENNEY JOHNSON
        & DEPAOLIS LLP
     2001 Pennsylvania Avenue, N.W.
     Suite 450
     Washington, D.C.  20006
     Telephone: (202) 659-5500
     Facsimile: (202) 785-3719
     dschloss@koonz.com
     kmurray@koonz.com

345

_/s/ Thomas Schoenbaum,_
Thomas Schoenbaum, JD, PhD
1301 Spring Street, Apt. 30i
Seattle, WA 98104
Telephone: (206) 364-3891
tjschoen@uw.edu

_Counsel for Plaintiffs_

346