## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JHON ALCIDE ET AL.**                               **CIVIL ACTION**

**VERSUS**                                                    **No. 19-13691**

**NIPPON YUSEN KABUSHIKI KAISHA**            **SECTION I**

## ORDER & REASONS

Before the Court are two motions—defendant Nippon Yusen Kabushiki Kaisha's ("NYK Line") motion[1] to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and plaintiffs' motion[2] for leave to conduct jurisdictional discovery. For the following reasons, NYK Line's motion is granted and plaintiffs' motion is denied.

### I.

This case arises out of a tragic collision between the USS Fitzgerald and the ACX Crystal in Japanese territorial waters on June 17, 2017.[3] Plaintiffs are all United States Navy sailors who were onboard the USS Fitzgerald at the time of the collision and sustained physical and/or emotional injuries as a result.[4] The ACX CRYSTAL was, at all pertinent times, a commercial container vessel chartered to NYK Line.[5] Plaintiffs assert a variety of tort claims against NYK Line.[6]

---

[1] R. Doc. No. 15.
[2] R. Doc. No. 23.
[3] R. Doc. No. 12, at 2; R. Doc. No. 15-3, 3 at ¶ 6.
[4] R. Doc. No. 12, at 2 ¶ 1.
[5] R. Doc. No. 12, at 8–9 ¶¶ 48–49; R. Doc. No. 15-1, at 1; R. Doc. No. 15-3, 3 at ¶ 5.
[6] *See* R. Doc. No. 12.

NYK Line is a corporation incorporated and headquartered in Japan that provides global logistics services, which include cargo transport by air and sea and various other services.[7] According to the declaration of Yutaka Higurashi ("Higurashi"), a corporate officer of NYK Line, the company's shareholder and board of directors meetings take place in Japan, which has always been and continues to be the center of NYK Line's operations and corporate decision-making.[8] NYK Line currently does not maintain a physical office in the United States, and it has not done so for over twenty-five years.[9]

Plaintiffs allege in their amended complaint that NYK Line's contacts with the United States include operating air-cargo service at six U.S. airports and cargo transport by sea at twenty-seven shipping terminals in U.S. ports; regularly calling on at least thirty U.S. ports; and dedicating seven of its vessels exclusively for the delivery of Toyota automobiles to the United States.[10]  Plaintiffs assert that NYK

---

[7] R. Doc. No. 12, at 7 ¶ 45; R. Doc. No. 15-3, at 3 ¶¶ 4, 9; R. Doc. No. 15-7, at 2.

[8] R. Doc. No. 15-3, at 3 ¶¶ 9–10.

[9] *Id*. at 4 ¶ 12. NYK Line's New York branch office closed in 1988 and its Resident Representative Office closed in 1993. NYK Line (North America) Inc., a subsidiary of NYK Line, assumed the functions of the branch office. *Id*.

[10] R. Doc. No. 12, at 10–11 ¶¶ 58, 61, 14 ¶ 69; R. Doc. No. 22, at 7. The Higurashi declaration clarifies that calls made to United States ports by NYK Line owned and/or chartered vessels from 2017–2019 represent between six and eight percent of all calls made at ports worldwide for the same time period. R. Doc. No. 15-3, at 6 ¶ 21.

Plaintiffs also allege that between September 2018 and 2019, the value of imported goods carried by NYK Line to the United States was more than $647 million, and NYK Line has been one of the top ten carriers for U.S.-bound imported goods since 2007. R. Doc. No. 22, at 7–8. Plaintiffs allege in their amended complaint that in 2017, NYK Line ranked eighth in containerized import trade in the United States and seventh in containerized export trade in the United States. R. Doc. No. 12, at 15 ¶¶ 71–72.

Line has at least one bank account in the United States at HSBC Bank USA, N.A. in New York, and they highlight that shares of NYK Line stock, for which the Bank of New York Mellon operates as the depository, can be purchased by U.S. investors.[11]

Plaintiffs point to the criminal prosecution of NYK Line by the United States Department of Justice with respect to a criminal price fixing conspiracy from 1997 to at least 2012 as further evidence of the company's contacts with the United States.[12] Plaintiffs further highlight that NYK Line's operations in the United States are subject to "considerable oversight" by the Federal Maritime Commission, which licenses NYK Line to operate in the United States.[13]

Plaintiffs contend that NYK Line is a frequent litigant in U.S. courts, having initiated at least thirty lawsuits since 2010.[14] Plaintiffs further assert that at least thirty-two cases have been filed against NYK Line in U.S. courts over the last ten

---

[11] R. Doc. No. 22, at 10. Plaintiffs further allege that NYK Line has operated logistics centers at sixty-six locations and warehouses at thirty-six locations in the Americas. *Id.* at 7 (citing Logistics Center Locations, NYK LINE FACT BOOK I 2017, at 16 (Apr. 28, 2017), https://www.nyk.com/English/ir/pdf/2017_factbook01_all.pdf (last visited Apr. 15, 2020)). However, the source plaintiffs cite for this information references the "NYK Group," and appears to reflect the data for NYK Line *and* its subsidiaries. Whether the logistics centers and warehouses in the Americas belong to NYK Line or its subsidiaries is immaterial to the Court's ultimate conclusion.

[12] R. Doc. No. 12, at 15 ¶ 73.

[13] R. Doc. No. 22, at 9. Plaintiffs note that the Federal Maritime Commission has previously assessed NYK Line a civil penalty of $1,225,000 for violations of the Shipping Act and rejected NYK Line and two other shipping companies' application to share competitively sensitive information prior to the finalization of their planned merger. *Id.* at 9–10. According to plaintiffs, NYK Line has also filed with the Federal Maritime Commission "dozens of space-charter, vessel-sharing, equipment-repositioning, and marine-terminal-services agreements involving trade with the United States." *Id.* at 10.

[14] *Id.* at 8.

years, none of which have been dismissed for lack of personal jurisdiction.[15] NYK Line also allegedly stipulates in its bills of lading and sea waybills with shippers using its carrier service that the Southern District of New York has exclusive jurisdiction to hear all disputes arising from shipments to or from the United States.[16]

NYK Line indirectly owns a majority share of NYK Ports, LLC, a Delaware corporation that indirectly acquired a minority share of Maher Terminals, LLC, another Delaware corporation that operates the largest terminal in the Port of New York and New Jersey.[17] NYK Line also indirectly owns a minority share of Japan LNG Investment, LLC, which is incorporated in Delaware and is a partner and shareholder of Cameron LNG, LLC ("Cameron").[18] Cameron recently opened a natural gas facility in Hackberry, Louisiana, which, according to plaintiffs, is projected to produce twelve million tons of liquefied natural gas per year.[19] Plaintiffs

---

[15] *Id*. at 9.

[16] *Id*. at 8–9.

[17] *Id*. at 4–5 ¶ 15; R. Doc. No. 12, at 14 ¶ 68. Plaintiffs allege in their amended complaint that NYK Line owns Ceres Terminals, a company that operates ports and terminals throughout the United States, including New Orleans Terminal, LLC at the Napoleon Avenue Terminal. R. Doc. No. 12, at 13 ¶ 66. Higurashi states in his declaration that at present, NYK Line no longer owns, directly or indirectly, any Ceres Terminal entities aside from the Canadian-based Ceres Halifax, Inc. R. Doc. No. 15-3, at 4–5 ¶ 15. Any interest NYK Line ever owned in any other Ceres Terminal entities was limited to an indirect interest by way of its subsidiary, NYK Ports, LLC. *Id*. Plaintiffs allege, in response to Higurashi's declaration, that NYK Line sold its interest in Ceres Terminals in 2019. R. Doc. No. 23-1, at 12.

[18] R. Doc. No. 15-3 at 5 ¶ 15.

[19] *Id*.; R. Doc. No. 12, at 13–14 ¶ 67.

assert that NYK Line signed a deal to manage the shipment of the natural gas from Louisiana.[20]

A number of NYK Line's subsidiaries also engage in business in the United States. NYK Line operates over two hundred subsidiaries worldwide, eleven of which are headquartered in this country.[21] Ten of these eleven subsidiaries are wholly owned by NYK Line.[22] Plaintiffs make numerous assertions about these subsidiaries' contacts with the United States, many of which Higurashi addresses in his declaration. For example, the Higurashi declaration clarifies that NYK Line wholly owns NYK Group Americas, Inc. ("NGA"), a holding company incorporated in Delaware for NYK Line's other U.S. entities.[23] NYK Line (North America), Inc. ("NYK NA") is a subsidiary of NGA and has offices in New Jersey, California, Texas, Maryland, Florida, and Illinois.[24]

Plaintiffs assert that NYK Line operates its wholly-owned subsidiaries in the United States "as a corporate group and an integrated whole."[25] Plaintiffs point to

---

[20] R. Doc. No. 12, at 13–14 ¶ 67. The Higurashi declaration does not address this assertion.

[21] R. Doc. No. 15-13, at 7–16; R. Doc. No. 22, at 10; R. Doc. No. 23-1, at 8. The rest of NYK Line's subsidiaries are incorporated throughout the world. *See* R. Doc. No. 15-13, at 7–16.

While plaintiffs' amended complaint alleges that NYK Line operates thirteen wholly-owned U.S. subsidiaries, they clarified in their opposition to NYK Line's motion to dismiss that NYK Line operates just eleven U.S subsidiaries. *Compare* R. Doc. No. 12, at 10–11 ¶ 58, *with* R. Doc. No. 22, at 10.

[22] R. Doc. No. 15-13, at 7–16.

[23] R. Doc. No. 15-3, at 4 ¶ 13.

[24] *Id.* at 4 ¶ 14.

[25] R. Doc. No. 12, at 12–13 ¶ 64.

NYK Line's adoption of several policies that apply to all of its subsidiaries and their directors and employees, such as a code of conduct, mission statement, business credo, and management policy, among others.[26] Plaintiffs highlight that the chief executive officer of NYK NA, Hiroshi Kubota ("Kubota"), is also a corporate officer of NYK Line.[27] However, the Higurashi declaration states that Kubota is the *former* president of NYK NA; he resigned from that position in 2017 and returned to Japan in 2018 to work as a corporate officer of NYK Line.[28] Plaintiffs do not provide any evidence rebutting Higurashi's declaration, but they maintain in their motion for leave to conduct jurisdictional discovery that Kubota is currently the chief executive officer of NYK NA and also a corporate officer of NYK Line.[29]

At the end of fiscal year 2018, twenty-four of NYK Line's 1,732 employees resided in the United States.[30] These twenty-four employees were working in the United States pursuant to secondment agreements.[31] NYK Line *and* its subsidiaries, in total, employed 35,711 people worldwide at the end of fiscal year 2018, 2,106 of whom resided in North America.[32]

---

[26] *Id.* at 11–12 ¶ 63; R. Doc. No. 23-1, at 8–9.

[27] R. Doc. No. 23-1, at 8.

[28] R. Doc. No. 15-3, at 6 ¶ 19.

[29] R. Doc. No. 23-1, at 8.

[30] R. Doc. No. 15-3, at 6 ¶ 17.

[31] *Id.* at 6 ¶ 18. Between fiscal years 2016 and 2018, the highest number of NYK Line employees working in the United States at any one time was twenty-six. *Id.*

[32] *Id.* at 5 ¶ 16. At the end of fiscal year 2016, 2,779 of NYK Line and its subsidiaries' 35,935 employees resided in North America; at the end of fiscal year 2017, 2,667 of NKY Line and its subsidiaries' 37,820 employees resided in North America. *Id.* NYK Line does not provide the number of employees specifically employed in the United States, but rather provides the number of employees working in North America as a whole. *See id.* n.4.

NYK Line's consolidated revenue that originated from North American entities for the fiscal years ending March 31, 2017 and March 31, 2019 was $1.36 billion and $1.47 billion, respectively.[33] These figures represent between seven and nine percent of NYK Line's worldwide consolidated revenue for the same time periods.[34]

On November 18, 2019, plaintiffs initiated suit.[35] NYK Line filed a motion[36] to dismiss plaintiffs' amended complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), which plaintiffs oppose.[37] Plaintiffs filed a motion[38] for leave to conduct jurisdictional discovery in the event that the Court finds that they did not establish a prima facie case of personal jurisdiction, which NYK Line opposes.[39]

## II.

The Court may require a nonresident defendant to appear before it, but its jurisdictional power is restricted by constitutional and statutory bounds. When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction

---

[33] R. Doc. No. 12, at 14 ¶ 70; R. Doc. No. 15-3, at 6 ¶ 20.

[34] R. Doc. No. 15-3, at 6 ¶ 20. For the fiscal year ending March 31, 2017, NYK Line's consolidated revenue that originated from North American entities represented approximately 7.91% of NYK Line's worldwide consolidated revenue for the same time period. *Id*. For the fiscal year ending March 31, 2019, NYK Line's consolidated revenue that originated from North American entities represented approximately 8.91% of NYK Line's worldwide consolidated revenue for the same time period. *Id*.

[35] R. Doc. No. 1. Plaintiffs' amended complaint was filed on February 10, 2020. R. Doc. No. 12. Plaintiffs' second amended complaint was filed on June 4, 2020. R. Doc. No. 38. The second amended complaint adds one additional plaintiff, but it does not otherwise allege any new factual allegations or causes of action.

[36] R. Doc. No. 15.

[37] R. Doc. No. 22.

[38] R. Doc. No. 23.

[39] R. Doc. No. 32.

pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident defendant. *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 667 (5th Cir. 2000). When the court considers a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as the Court does here, the plaintiff need only present a *prima facie* case showing that personal jurisdiction is proper.[40] *Sealed Appellant 1 v. Sealed Appellee 1*, 625 F. App'x 628, 631 (5th Cir. 2015).

To resolve the jurisdictional issue, the Court may receive "any combination of the recognized methods of discovery." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). But "on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (citation and quotation marks omitted). Even so, a court need not credit conclusory allegations, even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).

The United States Supreme Court has divided personal jurisdiction into two types—specific or "conduct-linked" jurisdiction and general or "all-purpose" jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014); *Sangha v. Navig8*

---

[40] If the Court had held an evidentiary hearing, plaintiffs would have to "demonstrate that the exercise of jurisdiction over [NYK Line] is proper by a preponderance of the evidence." *Irvin v. S. Snow Mfg., Inc.*, 517 F. App'x 229, 230 (5th Cir. 2013).

*ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). The former depends on a connection between the forum state and the underlying controversy, permitting courts to exercise jurisdiction over a nonresident defendant when that defendant has "purposefully directed" his activities at the forum state *"and* the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. 462, 472 (1985) (emphasis added); *see also Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011). Thus, specific jurisdiction is a claim-specific inquiry and applies in cases in which the defendant's forum-related activities give rise to the facts that form the basis of the lawsuit. Plaintiffs do not contend that the Court has specific jurisdiction over NYK Line.[41]

General jurisdiction, by contrast, is available "even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Plaintiffs assert that this Court has general jurisdiction over NYK Line pursuant to Federal Rule of Civil Procedure 4(k)(2).[42] Rule 4(k)(2), approximating a federal long-arm statute, "provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state."[43] *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234

---

[41] *See* R. Doc. No. 12, at 10 ¶ 56; *see generally* R. Doc. No 22.
[42] R. Doc. No. 12, at 10 ¶ 56.
[43] Rule 4(k)(2) provides that:

(5th Cir. 2016). "The due process required in federal cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment." *Id.* (internal quotation marks and citation omitted). That is, Rule 4(k)(2) requires the Court to consider NYK Line's contacts with the United States as a whole. *Id.*

Plaintiffs and NYK Line agree that this case arises under federal law and that NYK Line is not otherwise subject to jurisdiction in any particular state.[44] *See* Fed. R. Civ. P. 4(k)(2). Accordingly, the sole dispute is whether NYK Line has sufficient contacts with the United States to satisfy Fifth Amendment due process.

In *Daimler*, the Supreme Court reiterated its holding in *Goodyear* that the Fourteenth Amendment due process inquiry "is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' [but] . . . whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." 571 U.S. at 138–39 (citing *Goodyear*, 564 U.S. at 919).

---

For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).

[44] R. Doc. No. 12, at 9–10 ¶¶ 53, 56; R. Doc. No. 15-1, at 23. *See World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996) (holding that cases of admiralty arise under federal law for purposes of Rule 4(k)(2)).

NYK Line argues that its contacts render it "at home" in only one nation, Japan, and thus its contacts with the United States do not satisfy due process concerns.[45] Plaintiffs offer three arguments in response: (1) the Fourteenth Amendment "at home" analysis is inapplicable to admiralty cases, such as this one, that arise under the Fifth Amendment rather than the Fourteenth Amendment; (2) even if the Fourteenth Amendment "at home" analysis did apply to the instant case, NYK Line's continuous, systematic, and substantial contacts with the United States render it essentially "at home" in this country; and (3) NYK Line's eleven U.S. subsidiaries are its agents and alter egos, their contacts must be imputed to NYK Line, and these contacts further establish that NYK Line is essentially "at home" in the United States.[46] Plaintiffs also argue that they have, at minimum, satisfied their burden of establishing a prima facie case of jurisdiction and that, therefore, leave to conduct jurisdictional discovery is warranted.[47] The Court will consider each of the parties' arguments in turn.

## A.

### i.

Plaintiffs first argue that the "at home" test for general jurisdiction articulated by the United States Supreme Court in *Goodyear* and *Daimler* is inapplicable to admiralty cases because such cases arise under the Fifth Amendment, rather than

---

[45] *See* R. Doc. No. 15.
[46] *See* R. Doc. No. 22.
[47] *See* R. Doc. No. 23.

the Fourteenth Amendment.[48] Plaintiffs contend that the exceptional nature of admiralty cases warrants a more expansive and more flexible Fifth Amendment due process analysis than that under the Fourteenth Amendment.[49]

Plaintiffs point out that the Supreme Court left open the question of whether the standards governing requisite minimum contacts under the Fifth and Fourteenth Amendments are the same, and they urge the Court to hold that the Fifth Amendment due process analysis to determine personal jurisdiction is "a general fairness test incorporating *International Shoe*'s requirement that certain minimum contacts exist between the non-resident defendant and the forum such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[50] In other words, plaintiffs argue that the Fourteenth Amendment "at home" test articulated in *Goodyear* and *Daimler* should not apply to an admiralty claim, such as this one, that arises under the Fifth Amendment. Plaintiffs cite cases predating *Goodyear* and *Daimler* that have applied the same general fairness test to determine whether the defendant's contacts with the forum satisfy Fifth Amendment due process.[51]

Plaintiffs further contend that while the Fourteenth Amendment's due process requirement of minimum contacts between the nonresident defendant and the forum state acts to ensure that states do not reach out beyond the limits imposed on them

---

[48] R. Doc. No. 22, at 12.

[49] *Id*. at 12–16.

[50] *Id*. at 17–18 (citing *Max Daetwyler Corp*., 762 F.2d at 293 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

[51] *See id*. at 18–19.

12

by their status as coequal sovereigns in a federal system, such a concern is not present when a federal court hears a federal question case.[52] Plaintiffs reason that because the strictures of the Fourteenth Amendment due process analysis that attempt to prevent encroachment by one state upon the sovereignty of another do not apply with equal force to the adjudication of a federal claim in federal court, the Fifth Amendment warrants a more expansive approach to personal jurisdiction.[53] Moreover, plaintiffs argue, a flexible Fifth Amendment due process analysis is particularly appropriate where, as here, a federal court is determining whether to exercise personal jurisdiction over a foreign entity, because the Constitution expressly grants the federal government full extraterritorial authority.[54]

Plaintiffs also contend that a more flexible Fifth Amendment due process standard, such as a general fairness test, is especially necessary in admiralty cases. Plaintiffs highlight that federal courts' exclusive jurisdiction over admiralty cases has traditionally been viewed as exceedingly broad, covering any action arising from torts committed upon "the high seas or navigable waters."[55] Furthermore, plaintiffs aver, three idiosyncratic characteristics of the international maritime shipping industry further evidence why admiralty cases are exceptional and require a more flexible Fifth Amendment due process analysis.[56] These characteristics include the use of

---

[52] *Id.* at 17.

[53] *Id.* at 18.

[54] *Id.*

[55] R. Doc. No. 22, at 13 (quoting *Atl. Transp. Co. of W.Va. v. Imbrovek*, 234 U.S. 52, 59–60 (1914)).

[56] *Id.* at 14.

"flags of convenience"—i.e. the flag of another country—to avoid effective regulation; a complex corporate structure with many subsidiaries to shield the parent company from liability while maintaining corporate control over the subsidiaries; and the highly mobile nature of vessels.[57]

### *ii.*

While the Supreme Court left open the question of whether the Fifth Amendment imposes the same constraints on the exercise of personal jurisdiction by a federal court as the Fourteenth Amendment, the Fifth Circuit appears to have answered in the affirmative. *See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1783–84 (2017) (holding that "since our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."). In *Patterson*, the Fifth Circuit applied *Daimler*'s Fourteenth Amendment "at home" test for general jurisdiction to an admiralty case in which the plaintiff asserted personal jurisdiction pursuant to Rule 4(k)(2). 826 F.3d at 234 ("Thus, to assert general personal jurisdiction under Rule 4(k)(2), [the defendant's] contacts with the United States must be so continuous and systematic as to render it essentially at home in the United States.") (citing *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 420 (5th Cir. 2001); *Daimler*, 571 U.S. at 138–39).

---

[57] *Id.* at 14–16.

Plaintiffs argue that *Patterson* is distinguishable because although it involved an admiralty case, the claims were for "garden-variety personal injuries" sustained by the plaintiff while working on a vessel, whereas here, the claims arise from a collision of vessels "contemplated by the historically broad-reach of admiralty law."[58] Plaintiffs also assert that *Patterson* is distinguishable because the defendant had significantly fewer contacts with the United States than does NYK Line.[59] Furthermore, plaintiffs aver, because the plaintiff in *Patterson* did not contest that *Daimler* was controlling, the court assumed, without deciding, that *Daimler*'s "at home" test applied to the Fifth Amendment general jurisdiction analysis.[60]

Plaintiffs' arguments fail for several reasons. First, plaintiffs' argument with respect to the *type* of admiralty claim involved—whether it be a "garden-variety" tort or the result of a deadly vessel collision—is irrelevant to determining whether the Fourteenth Amendment general jurisdiction analysis applies to Fifth Amendment admiralty claims. Plaintiffs' contention that the "exceedingly broad" scope of admiralty jurisdiction, which encompasses many types of claims, demands a more flexible Fifth Amendment standard is similarly misplaced. Such arguments, as NYK Line points out, conflate subject matter jurisdiction with personal jurisdiction.[61] Subject matter jurisdiction concerns "[t]he *character* of the controversies over which federal judicial authority may extend," whereas personal jurisdiction "recognizes and

---

[58] R. Doc. No. 22, at 20.
[59] *Id.*
[60] *Id.* at 21.
[61] *See* R. Doc. No. 31, at 4–5.

protects [the] individual liberty interest" of the defendant. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701–02 (1982). Thus, plaintiffs essentially argue that federal courts' broad *subject matter* jurisdiction over admiralty claims also means that federal courts have broad *personal* jurisdiction over the defendants of such claims. Such an argument is contrary to Supreme Court precedent, which has made clear that subject matter jurisdiction and personal jurisdiction are separate legal requirements that serve distinct purposes.[62] *Id*. at 701; *cf. BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558–59 (2017) (holding that the Fourteenth Amendment due process constraint described in *Daimler* applies to all state-court assertions of general jurisdiction over nonresident defendants and does not vary with the type of claim asserted).

Second, although *Patterson* may not have expressly held that the Fifth and Fourteenth Amendment standards are the same, several other United States Courts of Appeals have held as much. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 54–55 (D.C. Cir. 2017) ("No court has ever held that the Fifth Amendment permits personal jurisdiction without the same 'minimum contacts' with the United States as the Fourteenth Amendment requires with respect to States.")[63]; *Waldman v. Palestine*

---

[62] Plaintiffs' argument that *Patterson* is distinguishable because NYK Line has more continuous and systematic contacts with the United States than the defendant in *Patterson* did is similarly irrelevant. R. Doc. No. 22, at 20. While plaintiffs may be factually correct, neither the Supreme Court nor the Fifth Circuit has ever indicated that the number of contacts that a defendant has with the United States dictates which due process standard applies.

[63] Plaintiffs attempt to distinguish *Livnat* on the grounds that the court analyzed whether it had specific, rather than general, jurisdiction, and that the case was not based in admiralty. R. Doc. No. 22, at 21. Their contentions are unavailing. First, the

*Liberation Org.*, 835 F.3d 317, 330 (2d Cir. 2016); *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1006 (11th Cir. 2015) (citation omitted); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012); *Abelesz v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350 (Fed. Cir. 2002).[64] Additionally, district courts within this circuit have consistently applied the *Goodyear-Daimler* Fourteenth Amendment standard to Fifth Amendment cases. *See, e.g.*, *MWK Recruiting, Inc. v. Jowers*, No. 18-444, 2019 WL 7761445, at *9 (W.D. Tex. July 29, 2019); *Skoglund v. PetroSaudi Oil Servs. (Venezuela) Ltd.*, No. 18-386, 2018 WL 6112946, at *3 (E.D. La. Nov. 20,

---

court in *Livnat* determined that the Fifth and Fourteenth Amendment due process standards were the same for the purpose of personal jurisdiction prior to analyzing whether the court could exercise personal jurisdiction—specific or general—over the defendant. *See* 851 F.3d at 54–56. Furthermore, the Court rejects plaintiffs' argument that admiralty cases demand a more flexible Fifth Amendment due process standard for the reasons previously addressed.

[64] Plaintiffs rely on *Repub. of Argentina v. Weltover, Inc.* in support of their assertion that the Fifth and Fourteenth Amendment due process standards for personal jurisdiction are not the same. 504 U.S. 607, 619–20 (1992); R. Doc. No. 22, at 19. In *Weltover*, the Supreme Court did not apply the "at home test," but rather determined that exercising jurisdiction over the defendant pursuant to the Foreign Sovereign Immunities Act (the "Act") satisfied Fifth Amendment due process by considering whether the defendant had minimum contacts with the United States sufficient to find that it purposefully availed itself of the privilege of conducting activities within the United States. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). First, *Weltover* predates *Daimler* and *Goodyear*. Second, the standard cited by the court from *Burger King Corp.* was the then-prevailing standard for *specific*— rather than *general*—jurisdiction. *See Burger King Corp.*, 471 U.S. at 472–73 (contemplating specific jurisdiction and discussing the difference between general and specific jurisdiction). Furthermore, "whether there [was] a constitutional basis for personal jurisdiction over [the defendant was] not before the Court as an independent question." *Weltover*, 504 U.S. at 619 n.2. Rather, the Supreme Court employed the test "only as an aid in interpreting the direct effect requirement of the [Act]." *Id.*

2018) (Lemelle, J.); *Firefighters' Ret. Sys. v. Royal Bank of Scotland PLC*, No. 15-482, 2017 WL 3381227, at *3 (M.D. La. Aug. 4, 2017).

Two Courts of Appeals have also rejected plaintiffs' contention that the Fifth Amendment imposes more lenient restrictions on personal jurisdiction because the Fifth Amendment contemplates disputes with foreign nations, rather than preventing states from encroaching upon each other's sovereignty. *See Livnat*, 851 F.3d at 54–55; *Waldman*, 835 F.3d at 329–30.  In *Livnat*, the court recognized that although "Fifth Amendment personal-jurisdiction standards do not safeguard federalism like Fourteenth Amendment standards do[,] . . . personal jurisdiction is not just about federalism." 851 F.3d at 55. Rather, personal jurisdiction also ensures fairness to the defendant and "protect[s] the sovereign concerns of other nations whose courts might otherwise adjudicate the claims." *Id*. (internal quotation marks and citations omitted). "[J]ust as Fourteenth Amendment personal-jurisdiction standards in many cases govern state courts' power relative to other states' courts (thus raising federalism concerns), Fifth Amendment standards often govern federal courts' power relative to other nations' courts, bringing international-comity concerns to the fore." *Id*.

Accordingly, the Court holds that the Fifth and Fourteenth Amendment due process standards for exercising general jurisdiction are the same and, consequently, NYK Line must have sufficient contacts with the United States to satisfy the "at home" test set forth in *Goodyear* and *Daimler* to be subject to the general jurisdiction of this Court.

**B.**

Plaintiffs next argue that even if *Daimler* applies to the instant matter, the Court still has general jurisdiction over NYK Line because this is an exceptional case in which a defendant-corporation is "at home" in a place other than its place of incorporation or principal place of business.[65]

***i.***

As previously discussed, *Goodyear* and *Daimler* held that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the [forum] are so 'continuous and systematic' as to render them essentially at home in the forum[.]" *Daimler,* 571 U.S. at 127 (quoting *Goodyear,* 564 U.S. at 919). Importantly, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-[forum] contacts." *BNSF*, 137 S. Ct. at 1559 (quoting *Daimler*, 571 U.S. at 139 n.20) (internal quotation marks omitted). The inquiry "instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide[,]" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20.

"The 'paradigm' forums in which a corporate defendant is 'at home,' [the Supreme Court] explained, are the corporation's place of incorporation and its principal place of business." *BNSF*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler,* 571 U.S. at 137; *Goodyear,* 564 U.S. at 924). However, the exercise of general jurisdiction

---

[65] R. Doc. No. 22, at 22.

is not limited to these forums. In an "exceptional case," a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that [forum]." *Daimler,* 571 U.S. at 139 n. 19; *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").

The Supreme Court in *Daimler* suggested that *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 43 (1952) exemplified such a case. 571 U.S. at 139 n. 19. In *Perkins*, the Court found that the defendant, a Filipino corporation, could be subject to general personal jurisdiction in Ohio based on its extensive contacts within the state. 342 U.S. at 448–49. Due to World War II, the corporation temporarily relocated the enterprise from the Philippines to Ohio. *Id*. at 447. The corporation's contacts with Ohio included maintaining an office, keeping company files there, corresponding from Ohio about business and employees, paying salaries to the company's president and two secretaries, maintaining company bank accounts, using an Ohio bank as a transfer agent for stock of the company, holding several directors' meetings, managing company policies concerning rehabilitation of company property in the Philippines, and sending funds to pay for projects in the Philippines. *Id.* at 447–48. Because Ohio then became "the center of the corporation's wartime activities" and could be considered "a surrogate for the place of incorporation or head office," *Daimler,* 571 U.S. at 130 n.8, suit was proper there. *Perkins,* 342 U.S. at 448.

*ii.*

Both NYK Line's place of incorporation and principal place of business are in Japan.[66] Thus, to exercise general jurisdiction over NYK Line, the corporation's contacts with the United States must make this an exceptional case. Plaintiffs point to the following facts as establishing that the United States serves as a surrogate for NYK Line's place of incorporation or principal place of business: NYK Line frequently utilizes U.S. ports and airports; NYK Line maintains at least one bank account in the United States; NYK Line allows stock to be purchased by U.S. investors through the use of a U.S. depository in New York; NYK Line dedicated seven vessels exclusively to shipping cargo for one client to the United States; NYK Line indirectly owns shares of corporations that conduct extensive business in the United States[67]; NYK Line signed a deal to manage the shipment of twelve million tons of liquefied natural gas per year from a natural gas facility in Louisiana; the Department of Justice investigated and prosecuted NYK Line; NYK Line is highly regulated by the Federal Maritime Commission; and NYK Line is a frequent litigant in U.S. federal courts.[68]

---

[66] R. Doc. No. 15-1, at 5; *see* R. Doc. No. 22, at 22.

[67] The Court accepts as true plaintiffs' uncontroverted assertion that at the time of the collision, NYK Line still owned an indirect interest of Ceres Terminal entities by way of its subsidiary, NYK Ports, LLC. R. Doc. No. 23-1, at 12; *see* R. Doc. No. 15-3, at 4–5 ¶ 15.

[68] R. Doc. No. 22, at 8–9; 22–23. Plaintiffs also assert that at least of one of NYK Line's corporate officers was sent to "head" a U.S. subsidiary. R. Doc. No. 22, at 22. The Higurashi declaration, however, as previously addressed, clarifies that Kubota, the corporate officer of NYK Line that plaintiffs allege is also president of a U.S. subsidiary, resigned from his position in the United States before returning to work for NYK Line in Japan.  R. Doc. No. 15-3, at 6 ¶ 19. Also, as previously stated, plaintiffs do not submit any evidence rebutting that fact. Accordingly, the Court credits the Higurashi declaration and does not accept plaintiffs' assertion as true. *See*

NYK Line highlights that only twenty-four of its 1,732 employees resided in the United States at the end of fiscal year 2018; NYK Line has not had an office in the United States for over twenty-five years[69]; its board of directors and shareholders' meetings take place in Japan, not the United States; and between 2017 and 2019, port calls made to the United States only represented between six and eight percent of all port calls made worldwide.[70]

NYK Line's contacts with the United States are not so continuous and systematic as to render this is an exceptional case in which a nonresident corporation is essentially "at home" in a place other than its place of incorporation or principal place of business. Therefore, NYK Line's contacts do not satisfy Fifth Amendment due process, and the Court cannot exercise general jurisdiction over the defendant pursuant to Rule 4(k)(2).

While maintaining a bank account, employing twenty-four employees, frequenting ports and airports, maintaining logistics centers and warehouses, and conducting business with companies in the United States may fairly be regarded as sustaining continuous and systematic contacts with the forum, that alone is *not* the test for general jurisdiction. *Daimler*, 571 U.S. at 138–39. Rather, the test is whether

_____

*Skoglund*, 2018 WL 6112946, at *2 ("The allegations of the complaint, except as controverted by opposing affidavits, are taken as true[.]") (citing *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

[69] The Court will assume, however, that plaintiffs' assertion that NYK Line has operated logistics centers and warehouses in the Americas is accurate. *See* R. Doc. No. 22, at 7. The Court will further assume that some of these logistics centers and warehouses are located in the United States.

[70] R. Doc. No. 15-1, at 4–5.

such contacts render NYK Line *essentially at home* in the United States. *Id.* Unlike the forum at issue in *Perkins*—the State of Ohio—here, the United States cannot fairly be considered "the center of [NYK Line's] activities" or "a surrogate for [NYK Line's] place of incorporation or head office." *See Daimler,* 571 U.S. at 130 n.8. All of NYK Line's high-level decision-making takes place in Japan, and port calls made to the United States represent just six to eight percent of all port calls made by NYK Line worldwide.[71] Furthermore, NYK Line's American employees represent less than 1.5 percent of all employees.[72]

Whether the Court has general jurisdiction over NYK Line does not turn solely on the magnitude of NYK Line's contacts with the United States. *BNSF*, 137 S. Ct. at 1559. Rather, the Court must consider NYK Line's activities in their entirety, nationwide and worldwide. *See Daimler*, 571 U.S. at 139 n.20.  NYK Line's contacts with the United States represent a small portion of its contacts worldwide—NYK Line cannot be considered "at home" in every country where it conducts business. *See id.*  Moreover, finding that NYK Line is "at home" in the United States based on the aforementioned contacts would allow any foreign corporation that frequents ports and airports, maintains a bank account, and employs people and conducts business in the United States to be subject to the general jurisdiction of United States courts. Such an exercise of general jurisdiction "would scarcely permit [foreign] defendants 'to structure their primary conduct with some minimum assurance as to where that

---

[71] R. Doc. No. 15-3, at 3 ¶ 9, 6 ¶ 21.
[72] *Id.* at 6 ¶ 18.

conduct will and will not render them liable to suit.'" *Id.* at 139 (citing *Burger King Corp.,* 471 U.S. at 472 (internal quotation marks omitted)).

The Court is not persuaded that NYK Line's frequent involvement with litigation in U.S. courts renders it at home in the United States. First, United States courts' *criminal* jurisdiction over corporations far exceeds that of their *civil* jurisdiction, and thus the fact that the Department of Justice was able to prosecute NYK Line is irrelevant to whether this Court has jurisdiction over NYK Line. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 341 (2d Cir. 2016) (noting that the criminal due process test is more expansive than the civil due process test when determining whether jurisdiction is appropriate).

Second, the Court does not find plaintiffs' argument with respect to NYK Line's litigation history in U.S. federal courts to be compelling. Plaintiffs emphasize the fact that NYK Line has sued and been sued numerous times in U.S. federal courts, and that no court has ever dismissed a case against NYK Line for lack of personal jurisdiction.[73] However, this result is entirely unsurprising, considering that NYK Line inserts a forum selection in its bills of lading and sea waybills that submits both parties to the jurisdiction of the Southern District of New York with respect to any dispute that arises from such contracts.[74] Plaintiffs have not directed the Court's attention to any case in which a court found that it had personal jurisdiction over NYK Line when jurisdiction was disputed. Furthermore, plaintiffs do not cite any

---

[73] R. Doc. No. 22, at 8–9.
[74] *Id.*

authority supporting the contention that a corporation's willingness to submit to personal jurisdiction in one particular federal court for a particular type of dispute renders it subject to the jurisdiction of all United States courts for all disputes.[75] *See Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 88 (2d Cir. 2018) ("[A] party's consent to jurisdiction in one case . . . extends to that case alone and in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given.") (internal quotation marks and citation omitted).

Plaintiffs rely on *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001) and *Adams*, 364 F.3d at 652, which held that the court had general jurisdiction over the defendants pursuant to Rule 4(k)(2).[76] Plaintiffs contend that because NYK Line's contacts with the United States are more extensive than the contacts of the defendants in *System Pipe* and *Adams*, this Court has general jurisdiction over NYK Line.[77]

In *System Pipe*, the Fifth Circuit concluded that the plaintiff's factual basis for claiming general jurisdiction over the foreign defendant corporation, if established, would be sufficient to show national minimum contacts.[78] 242 F.3d at 325. Likewise,

---

[75] Plaintiffs similarly do not cite any authority for their proposition that because NYK Line is heavily regulated by the Federal Maritime Commission, it is subject to the general jurisdiction of U.S. courts.

[76] Plaintiffs also rely on *Cooper v. Tokyo Elec. Power Co., Inc.*, 166 F. Supp. 3d 1103, 1137 (S.D. Cal. 2015), *aff'd,* 860 F.3d 1193 (9th Cir. 2017). R. Doc. No. 22, at 11 n.41. However, the portion of the opinion quoted by plaintiffs addressed international comity, not personal jurisdiction. The court's personal jurisdiction over the defendant was not in dispute.

[77] R. Doc. No. 22, at 5, 11, 20, 23.

[78] Those contacts included the following: (1) the defendant's fleet of vessels regularly called at most major ports in over fifty countries, including the United States; (2) in

in *Adams*, the court found that it had general jurisdiction over the foreign defendant-corporation after determining that the defendant had continuous and systematic contacts with the United States.[79]  364 F.3d at 651–52. Neither case applied the "at home" due process standard, as both cases were decided prior to the Supreme Court's decision in *Goodyear*.

As previously mentioned, the Fifth Circuit in *Patterson*—decided post-*Goodyear* and *Daimler*—applied the "at home" test to determine whether the court had general jurisdiction over the defendant pursuant to Rule 4(k)(2). 826 F.3d at 234. However, the *Patterson* court also discussed *System Pipe* and *Adams*. *Id*. at 236. Plaintiffs contend that because *Patterson* did not explicitly overrule *System Pipe* and *Adams* in light of *Goodyear* and *Daimler*, both cases remain precedential.[80] Therefore,

---

1993, the defendant established and began to advertise Azsco America Line to provide service for U.S. Gulf Ports to the Mediterranean and Black Seas; (3) the defendant maintained another line of vessels to carry cargo from the east coast to Israel; (4) at least one of the defendant's vessels had previously been detained in Texas; (5) the defendant's ship, also a named defendant, the M/V VIKTOR KURNATOVSKIY, called and discharged the plaintiff's cargo at the Port of Houston; (6) since 1993, the defendant had been a named party in approximately fifty actions in United States district courts; and (7) the defendant had been a defendant in another suit maintained in the Southern District of Texas which was not dismissed for lack of personal jurisdiction. *System Pipe*, 242 F.3d at 325.

[79] The defendant's contacts included the following: it had paid claims to numerous U.S. companies (155 in all from 1991 to 1994); it had covered numerous other U.S. companies which made no claims; and it had insured hundreds of shipments to the United States. *Adams*, 364 F.3d at 651. Records showed that the defendant insured approximately 260 shipments to the United States between 1989 and 1995 for one company alone; 138 of these shipments were valued at over $130 million. *Id*. The defendant used and paid a number of individuals in the United States as claims adjusters, surveyors, investigators, and other representatives to enable it to conduct business in America. *Id*.

[80] R. Doc. No. 22, at 20.

plaintiffs conclude, because NYK Line has more extensive contacts with the United States than the defendants in *System Pipe* and *Adams* did, the Court has general jurisdiction over NYK Line.[81]

Assuming, without deciding, that NYK Line's contacts with the United States are just as extensive, if not more extensive, than those of the defendants in *System Pipe* and *Adams*, plaintiffs' argument is still unavailing. First, *Patterson* did not cite *System Pipe* and *Adams* to prescribe a baseline of requisite minimum contacts a foreign defendant must meet to be subject to the general jurisdiction of U.S. courts. Rather, the *Patterson* court examined those cases to distinguish the "rare cases" in which the Fifth Circuit found general jurisdiction over a foreign defendant from the case before it and to demonstrate how few contacts the *Patterson* defendant had with the United States in comparison with the defendants in *System Pipe* and *Adams*. *Id.* Furthermore, the *Patterson* court recognized that both *System Pipe* and *Adams* predated *Goodyear* and *Daimler*, and it noted that the Supreme Court's more recent personal jurisdiction decisions are part of an "access-restrictive trend." *Id.* at 237 n.7; *see also Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 340 (5th Cir. 2020) (noting that the cited cases were "wide of the mark" because they predated the "at home" test articulated in *Goodyear* and *Daimler*).[82]

---

[81] *Id.*

[82] Plaintiffs also cite four post-*Goodyear* cases from this district in support of their contention that the Court has general jurisdiction over NYK Line pursuant to Rule 4(k)(2). R. Doc. No. 22, at 6–7. Three of those cases involved the same defendant, and each section of this district court ultimately determined that it had general jurisdiction over the defendant-corporation because, among other reasons, it operated out of an office in Houston, Texas. *See Johnson v. PPI Tech. Servs., L.P.*, 926 F. Supp.

*iii.*

Having concluded that it does not have general jurisdiction over NYK Line based on the facts alleged, the Court will next turn to plaintiffs' motion for jurisdictional discovery.[83]

As the party opposing dismissal and requesting discovery, plaintiffs bear the burden of demonstrating its necessity. *Embry v. Hibbard Inshore, L.L.C.*, 803 F. App'x 746, 746 (5th Cir. 2020). As a result, plaintiffs must make a "preliminary showing of jurisdiction" by "present[ing] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts." *Fielding*, 415 F.3d at 429 (internal quotation marks and citation omitted). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.* at 822 (internal quotation marks and citation omitted); *Guajardo v. State Bar of Texas*, 803 F. App'x 750 (5th Cir. 2020) ("Generally, a party is not entitled

---

2d 873, 885–86 (E.D. La. 2013) (Barbier, J.); *Foster v. GlobalSantaFe Offshore Serv.*, No. 13-00065, 2013 WL 4012705, at *4 (E.D. La. Aug. 6, 2013) (Berrigan, J.); *Ogden v. GlobalSantaFe Offshore Servs.*, 31 F. Supp. 3d 832, 841–42 (E.D. La. 2014) (Fallon, J.). Plaintiffs do not allege that NYK Line currently operates any office in the United States.

Plaintiffs also cite *O'Berry v. ENSCO Int'l, LLC*, No. 16-3569, 2017 WL 1048029, at *9 (E.D. La. Mar. 20, 2017) (Morgan, J.), in which the court first found that it did not have general jurisdiction over the defendant, but then went on to hold that Rule 4(k)(2) provided a separate basis for jurisdiction. Neither Supreme Court nor Fifth Circuit precedent supports a finding that Rule 4(k)(2)'s requirement that exercising jurisdiction be "consistent with the United States Constitution and laws" provides an independent basis for the Court to assert personal jurisdiction. Rather, Rule 4(k)(2)'s requirement necessitates a finding that exercising general jurisdiction over NYK Line satisfies Fifth Amendment due process concerns—i.e., the "at home" test. *See* Fed. R. Civ. P. 4(k)(2)(B); *Patterson*, 826 F.3d at 234.
[83] R. Doc. No. 23.

to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a motion to dismiss."). "A plaintiff seeking discovery on matters of personal jurisdiction is expected to identify the discovery needed, the facts expected to be obtained thereby, and how such information would support personal jurisdiction." *Mello Hielo Ice, Ltd. v. Ice Cold Vending LLC*, No. 11-629, 2012 WL 104980, at *7 (N.D. Tex. Jan. 11, 2012) (citing *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 855 (5th Cir. 2000)).

Plaintiffs have failed to demonstrate that discovery is necessary, as they have not alleged with reasonable particularity the existence of facts that would establish that NYK Line is "at home" in the United States. Plaintiffs contend that discovery should be permitted to determine the frequency and volume at which NYK Line uses American air-cargo terminals for its air-freight-forwarding operations.[84] Plaintiffs also aver that discovery is necessary because little information is available with respect to NYK Line's bank accounts in the United States and the taxes it pays here.[85] Plaintiffs do not explain how these facts would sway the Court's analysis and establish that NYK Line is subject to the Court's general jurisdiction.

Even assuming that all or nearly all of NYK Line's air-freight-forwarding business passes through American air-cargo terminals, this fact would not render the United States a surrogate for NYK Line's place of incorporation or head office. *See*

---

[84] R. Doc. No. 23-1, at 4. However, plaintiffs aver in their opposition to NYK Line's motion to dismiss that NYK Line has operated is air-cargo service at six U.S. airports. R. Doc. No. 22, at 7.
[85] R. Doc. No. 23-1, at 4–5.

*Daimler,* 571 U.S. at 130 n.8. Likewise, the number of bank accounts NYK Line possesses or the amount of taxes it pays would also not establish that NYK Line is at home in the United States.[86] *See Monkton*, 768 F.3d at 434 (affirming the district court's denial of jurisdictional discovery because even if the plaintiff found further evidence that the defendant had additional communications and contacts with the forum, this would not be enough to show that the defendant is "at home" in the forum when its place of incorporation and principal place of business were in the Cayman Islands). Furthermore, plaintiffs have not challenged any of the jurisdictional facts established by the Higurashi declaration.

Accordingly, the Court denies plaintiffs' motion for leave to conduct jurisdictional discovery with respect to NYK Line's contacts with the United States.

---

[86] Plaintiffs rely on *Blessey Marine Servs., Inc. v. Jeffboat, LLC*, No. 10-1863, 2011 WL 651999, at *6–*7 (E.D. La. Feb. 10, 2011) (Fallon, J.), which permitted the plaintiff to conduct jurisdictional discovery with respect to the issue of whether the court had general jurisdiction over the defendant. R. Doc. No. 23-1, at 2–3. However, since *Blessey* was decided before *Goodyear*, the court analyzed whether the plaintiff had successfully alleged the possible existence of facts that would satisfy the less stringent "continuous and systematic contacts" standard. *Blessey*, 2011 WL 651999, at *4.

Plaintiffs' reliance on *World Tanker Carriers* is similarly misplaced, as the case was remanded for further jurisdictional discovery because the district court's denial of discovery was premised on its erroneous conclusion that Rule 4(k)(2) did not apply to admiralty cases and, therefore, an analysis of defendants' nationwide contacts would be irrelevant. 99 F.3d at 724; R. Doc. No. 23-1, at 3 n.8.

Plaintiffs' citation to *Patterson v. Blue Offshore BV*, No. 13-337, 2015 WL 4096581, at *18 (E.D. La. July 6, 2015) (Brown, J.), *aff'd sub nom. Patterson*, 826 F.3d at 231 is similarly irrelevant, as the court mentioned, but did not explain, why it previously granted jurisdictional discovery on the issue of the defendant's contacts with the United States as a whole.

30

## C.

### *i.*

Plaintiffs next assert that NYK Line's eleven U.S. subsidiaries are its agents and alter egos and, therefore, their contacts must be imputed to NYK Line for the purpose of determining general jurisdiction.[87] According to plaintiffs, these subsidiaries' contacts further demonstrate that NYK Line's contacts with the United States satisfy Fifth Amendment due process concerns, and jurisdictional discovery should be permitted to fully investigate the relationship between NYK Line and these subsidiaries.[88]

NYK Line argues in response that *Daimler* and Fifth Circuit precedent make clear that even where imputing a subsidiary's contacts to a parent might be permissible based upon an agency or alter ego theory, those contacts are only imputed to the parent in the context of specific, rather than general, jurisdiction.[89] NYK Line further contends that even if the contacts of its U.S. subsidiaries could be imputed to NYK Line for the purpose of establishing general jurisdiction under an agency or alter ego theory, such contacts would still render NYK Line at home in Japan, not the United States.[90] Therefore, NYK Line asserts, jurisdictional discovery on NYK Line's relationship with its U.S. subsidiaries is unnecessary.[91] Finally, NYK Line argues that plaintiffs should not be allowed to proceed under an alter ego theory

---

[87] R. Doc. No. 23-1, at 6–13.

[88] *Id.* at 6.

[89] R. Doc. No. 32, at 8–12.

[90] *Id.* at 12–13, 15–17.

[91] *Id.*

because they have failed to frame alter ego allegations in their amended complaint, and plaintiffs' discovery request exceeds the limits of Federal Rule of Civil Procedure 26.[92]

***ii.***

In *Daimler,* the Supreme Court was presented with the question of whether a principal can be subject to general jurisdiction based on its agent's contacts with the forum state. 571 U.S. at 133–35. The Supreme Court recognized: "Daimler argues, and several Courts of Appeals have held, that a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego." *Id*. at 134–35. The Supreme Court noted that while agency relationships "may be relevant to the existence of *specific* jurisdiction[,]" because "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there[,] . . . [i]t does not inevitably follow . . . that similar reasoning applies to general jurisdiction." *Id*. at 135 n.13. For example, a subsidiary "might be its parent's agent for claims arising in the place where the subsidiary operates, yet not its agent regarding claims arising elsewhere." *Id*. at 135.

The Supreme Court, however, then decided that it "need not pass judgment on invocation of an agency theory in the context of general jurisdiction, for in no event can the appeals court's analysis be sustained." *Id*. Even assuming that Daimler's subsidiary was at home in the forum state of California, and its actions could be imputed to Daimler, "there would still be no basis to subject Daimler to general

---

[92] *Id*. at 15–21.

32

jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 136.

Since *Daimler*, the Fifth Circuit has held that a subsidiary's contacts may be imputed to subject its parent to specific jurisdiction. *See In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 531 n.7 (5th Cir. 2014) (noting that the Fifth Circuit "recognize[s] that imputation of jurisdictional contacts between an agent and its principal can comport with Due Process"). The Fifth Circuit requires "evidence of one corporation asserting sufficient control to make the other its agent or alter ego[,]" and it has "set out [seven] factors to be considered in deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) (citing *Hargrave v. Fibreboard Corporation,* 710 F.2d 1154, 1159 (5th Cir. 1983)).[93] The *In re Chinese-Manufactured Drywall* court did not address, however, whether, in light of *Daimler*, a subsidiary's contacts with a forum may be imputed to the parent for the purpose of general jurisdiction.

---

[93] These seven factors are:

> (1) [the] amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.

*Administrators of Tulane Educ. Fund v. Ipsen, S.A.*, 450 F. App'x 326, 330 (5th Cir. 2011) (quoting *Dickson*, 179 F.3d at 339).

NYK Line argues that both *Daimler* and *In re Chinese-Manufactured Drywall* limit the imputation of jurisdictional contacts between a parent and subsidiary to cases of specific jurisdiction and, therefore, its subsidiaries' contacts with the United States cannot be imputed to NYK Line to support the exercise of general jurisdiction.[94] However, as just mentioned, neither *Daimler* nor *In re Chinese-Manufactured Drywall* squarely addressed that issue.

It is unnecessary for the Court to resolve that issue now. To make the general jurisdiction assessment, the Court will assume *arguendo,* as *Daimler* did, that the contacts of NYK Line's U.S. subsidiaries can be considered. The Court will also assume that jurisdictional discovery would reveal that NYK Line exercises sufficient control over its eleven U.S. subsidiaries to make them its agents or alter egos pursuant to Fifth Circuit precedent. *See Dickson Marine*, 179 F.3d at 338.

*Daimler* makes clear that a subsidiary being "at home" in the forum does not automatically subject the parent to general jurisdiction. *See Air Tropiques SPRL v. N. & W. Ins. Co., Ltd.,* No. 13-1438, 2014 WL 1323046, at *10 (S.D. Tex. Mar. 31, 2014) ("What is clear from *Daimler* is that, for a court to exercise general jurisdiction over a foreign corporation, that corporation itself—not its managing agent or subsidiary or affiliate—must be 'at home' in the forum state." (citing *Daimler,* 571 U.S. at 138–39)). The Court must look at NYK Line's contacts with the United States, including those imputed from its eleven U.S. subsidiaries, in the context of the entirety of its operations. *See Daimler*, 571 U.S. at 139 n.20; *see also Sonera Holding*

---

[94] R. Doc. No. 32, at 11.

*B.V. v. Cukurova Holding A.S.,* 750 F.3d 221, 226 (2d Cir. 2014) ("Even assuming [defendant's three subsidiaries'] New York contacts should be imputed to [defendant], they do not shift the company's primary place of business (or place of incorporation) away from Turkey.").

Ten of NYK Line's eleven U.S. subsidiaries are wholly owned.[95] These subsidiaries are incorporated in the United States and maintain offices throughout the country.[96] Accordingly, these subsidiaries are "at home" in the United States. NYK Line and its subsidiaries employed 35,711 people worldwide at the end of fiscal year 2018, 2,106 of whom resided in North America.[97] NYK Line's consolidated revenue generated by its North American entities for fiscal years 2017 and 2019 represented between seven and nine percent of its worldwide consolidated revenue for the same time periods.[98] Turning to NYK Line's operations worldwide, NYK Line owns over two-hundred subsidiaries.[99] Many of these subsidiaries are wholly owned, including forty-one in Japan and twelve in China.[100]

Considering NYK Line's contacts combined with the contacts of its U.S. subsidiaries, in the context of its entire operation, the Court finds that NYK Line is not "at home" in the United States. NYK Line cannot be deemed "at home" in every

---

[95] R. Doc. No. 15-13, at 7–16.

[96] R. Doc. No. 15-3, at 4 ¶¶ 13–14.

[97] *Id*. at 5 ¶ 16. NYK Line does not provide the number of employees specifically employed in the United States, but, presumably, this number is less than 2,106.

[98] R. Doc. No. 15-3, at 6 ¶ 20. NYK Line does not provide the consolidated revenue generated from only U.S. entities but, presumably, this revenue represents less than seven to nine percent of NYK Line's worldwide consolidated revenue.

[99] R. Doc. No. 15-13, at 7–16; R. Doc. No. 22, at 10; R. Doc. No. 23-1, at 8.

[100] *See* R. Doc. No. 15-13, at 7–16.

country in which it operates a small fraction of its wholly owned subsidiaries, maintains less than six percent of its employees, and generates less than ten percent of its revenue. Even assuming that the contacts of NYK Line's U.S. subsidiaries can be imputed to NYK Line for the purpose of general jurisdiction, NYK Line's contacts with the United States still represent only a fraction of its contacts worldwide. *See Daimler*, 571 U.S. at 139 n.20.[101]

### III.

The Court is constrained by Supreme Court and Fifth Circuit precedent from exercising personal jurisdiction over the defendant.  Accordingly,

**IT IS ORDERED** that NYK Line's motion to dismiss is **GRANTED**, and plaintiffs' claims against NYK Line are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to conduct jurisdictional discovery is **DENIED**.

New Orleans, Louisiana, June 4, 2020.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[101] It is unnecessary for the Court to address plaintiffs' motion for leave to conduct jurisdictional discovery with respect to NYK Line's relationship with its U.S. subsidiaries, as the Court assumes discovery would result in plaintiffs' desired outcome. It is similarly unnecessary for the Court to address NYK Line's other arguments in support of its motion to dismiss.